## CÆSAR HUNTER, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

ASSAULT WITH INTENT TO RAPE—INTENT GRAVAMEN OF CHARGE—EVIDENCE.

1. The gravamen of the offense in an indictment charging an assault with intent to rape is the *intent* with which the assault was made ; and this question of *intent*, throughout the instructions of the court, should be kept prominently before the minds of the jury as being the main subject of their inquiry ; and if there be a reasonable doubt as to the intent, such doubt necessitates an acquittal.

2. The intent in such cases must be shown by the State to have so possessed the accused that his determination was to consummate the rape regardless of resistance and want of consent.

3. The manner, time, place, surroundings and circumstances under which such an assault is made, and the want of opportunity to consummate the crime, are subjects of material consideration upon the question of intent.

4. The jury being the sole and exclusive judges of the weight and credibility to be given to any and all evidence, have the right to disbelieve the evidence of an interested witness solely on the ground of interest.

Writ of Error to the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*John Wallace* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

TAYLOR, J. :

Cæsar Hunter, the plaintiff in error, at the October term, 1891, of the Criminal Court of Record for Duval county, was tried upon an information and convicted of the charge of "assault with intent to rape," and being sentenced to ten (10) years in the penitentiary, after refusal of his motion for new trial, brings his case here upon writ of error. As the evidence for the State is not voluminous, and as we have some comments to make upon its sufficiency for conviction, we will give it in full as it appears in the record.

Lucy Biggs, the prosecutrix, for the State testified as follows : "My name is Lucy Biggs ; I live in the city of Jacksonville, Florida. Some time in June last I was committed to the city jail for disorderly conduct in the streets. I was put in there over night, and remained there until next morning. I had taken several drinks of whiskey that night, but was not drunk. I was reclining on a bench ; Cæsar Hunter came to the door ; I rose up ; he asked me if I lived in LaVilla. The next morning some one pushed the defendant, Cæsar Hunter, in my cell, and he asked me to give him some, and at the same time ran his hand under my clothes, took hold of my shoulder, and tried to push me over, when I screamed, and he ran out from the cell. I had never seen him before that morning, but I identified him as being the man. This happened in the county of Duval, and State of Florida. My occu-

pation is keeping a house of assignation. My husband, Charley Biggs, was convicted at the last term of this court for highway robbery, and he is to be tried at this term of the court for the same crime. I am also under bond to this court for larceny. The night I was arrested for this was since I was put in jail June last, but I can not remember the exact date. Biggs is my second husband, and I got divorced from my first husband in New Jersey. The night I was arrested for larceny I paid Captain Dennis, a very black man, two dollars to go with me to Sheriff N. B. Broward's house to see something about my husband, who was then in jail for robbery. We went down to Sheriff Broward's. I did not know the way down there, and Captain Dennis went with me. Captain Dennis and myself went to several barrooms and took several drinks. Dennis rode on the outside of the carriage with the driver. After the assault on me in the city jail my sentence was suspended. When I returned I was arrested for larceny and taken to the city jail."

Bartola Canova for the State testified : "My name is Bartola Canova ; I am the keeper of the city jail of the city of Jacksonville, Florida. I know Lucy Biggs, the prosecuting witness in this cause. I also know Cæsar Hunter, the defendant. Some time in June last, Lucy Biggs, Cæsar Hunter and some other prisoners were in the city jail for violating some of the city ordinances. Lucy Biggs was in the women's cell ; she was put in there over night. Next morning the men prisoners were turned out in the corridor to go to work,

or to get their breakfast. The cell that Lucy Biggs was in was so fixed that it could be opened from the outside, but not from the inside. There were several other prisoners in the corridor with Cæsar Hunter, and the same prisoners were turned out when he was turned out. I heard some one scream twice, I think, that morning. I do not know whether the scream was in Lucy Biggs' cell or not; it sounded like it was there. I ran out into the passage, and when I got where I could see, I saw Cæsar Hunter come running with a broom in his hand. He was about ten steps from the cell door that Lucy Biggs was in, and several other prisoners were about four or five steps from him. It was not the business of Hunter to sweep."

William C. West for the State testified : " I am city recorder of Jacksonville, Florida. I was in the room with Bartola Canova the morning the alleged crime was committed, and heard the screams of some one who seemed to be in one of the cells. I do not know whether the screams I heard were in Lucy Biggs' cell or not. It was in that direction. Canova and myself went in the passage together, and when we got in sight, I saw Cæsar Hunter about fourteen steps from the door of Lucy Biggs' cell sweeping the floor, as though he was very much excited. There were several other prisoners not a great distance from him. Hunter was not running, but was sweeping the floor."

This comprises the entire evidence for the State.

The defendant introduced as a witness one Captain Dennis, *alias* Dennis Jenkins, stated in the record to

be a very black negro, who testified as follows : "I know Lucy Biggs, the prosecuting witness in this cause. The night she was arrested for larceny, she gave me one dollar to go with her out riding. I rode inside the carriage with her. No one was in the carriage but me and her. We went to four or five barrooms in the carriage together, and she, myself and the driver of the carriage drank at each barroom. We went way out on the shell road driving. I was doing nothing but riding and drinking We did not go down to Sheriff Broward's house, and she did not ask me or the driver to carry her there that night. I was with her until she was arrested and put in jail. I called at Lucy Biggs' house to take her a note from her husband, when she asked me to go in the carriage."

Paul G. Phillips, chief of police of Jacksonville, testified for the defendant that Lucy Biggs' general character for chastity and morality in the neighborhood in which she lived was very bad.

N. B. Broward, sheriff of Duval county, also for the defendant, testified to the bad character of Lucy Biggs for chastity and morality ; and testified further that she did not go to his house the night she was arrested for larceny.

This constituted the entire evidence for the State and for the defense. At the trial the defendant's counsel requested the court to give to the jury the following instructions :

"1st. If the jury has a reasonable doubt as to whether the defendant was at the time he put his hands upon the prosecutrix trying to get her to consent to an improper intercourse, or commit the crime of rape, they should give him the benefit of the doubt and acquit him.

"2d. The essential elements of force in an assault with intent to rape, are threats or fraud ; and, unless one of these is proved, the defendant should be acquitted.

"3d. The request of the defendant to the prosecutrix to consent to an improper intercourse may be taken in consideration by the jury to disprove the fact that the defendant intended to commit rape.

"4th. You have the right to disbelieve the evidence of any interested witness, upon no other ground than the fact of interest. You have the right to disbelieve the evidence of any non-interested witness if his evidence appears impossible or improbable."

All four of which charges the court refused to give, and to each of which refusals the defendant by his counsel excepted, and their refusal is assigned as error here.

The first of these refused instructions should have been given. The gravamen of the charge contained in this information consisted in the *intent* with which the alleged acts of the defendant were committed. The *intent* of the prisoner should, throughout the instructions of the court, have been kept prominently before

the minds of the jury as being the main subject of their inquiry ; and, if, as to this, the main subject of inquiry in this class of cases, the jury have a reasonable doubt, that doubt most assuredly necessitates an acquittal. From this standpoint, the charge requested became very material to the accused ; it stated the law correctly, and error was committed in its refusal.

The second refused instruction above states the rule of law that seems to have been established in the State of Texas by special statutory enactment (Thompson vs. State, 43 Texas, 583), but we can not say that the rule announced in the charge is applicable generally, in the absence of such statutory enactment, and, therefore, see no error in its refusal.

The third refused instruction above bears also materially upon the main question in issue—the *intent* of the defendant ; it states the law correctly, and for the reasons stated above, should have been given ; and its refusal was error.

The fourth refused instruction above states the law correctly, and under the proof in this case, should have been given. The jury, under our system of laws, being the sole and exclusive judges of the weight and credibility to be given to any and all evidence, have the right, as is announced in this refused instruction, to disbelieve the evidence of an interested witness solely upon the ground of interest. The refusal to give this fourth instruction was error.

As our conclusion is, that the judgment must be reversed because of the errors herein already pointed out, we think some comments upon the evidence exhibited in this record will not be inappropriate. The prosecutrix here, who is in reality the only witness to the material facts constituting the alleged crime, is shown to be at present, unknown to any other than evil fame, herself a convict of infamous crime ; a willing consort of persons of the same caste of skin and morals as the accused defendant. Her evidence, except as to the fact of her outcry, is wholly uncorroborated by any other testimony of fact or circumstance. The cause of her outcry is not corroborated by any evidence whatever. The time, place, surroundings, presence of other persons within a few feet and within the same walls ; and, generally, the utter want of *opportunity* to consummate the crime of rape, all seem to us *strongly* to repel the idea of such an *intent* on the part of the accused as would be sufficient to sustain a conviction of the crime. The *intent* in such cases must be shown by the State to have so possessed the accused that his determination was to consummate the rape regardless of resistance and want of consent. In the case of Curry vs. State, 4 Texas Ct. App., 574, where the facts of the assault and the language of the assailant were identical with the case here, and where the character of the prosecutrix was not impugned as here, and where the place and surroundings were much more opportune for the consummation of the crime than in this, the court held that, taking into consideration the *manner, time,*

*place* and *circumstances* under which the assault was made, however wanton and outrageous the assault, they were not justified in presuming that it was the purpose and intent of the accused to accomplish his design by force, and without the consent of the assaulted female. While we are not called upon at present pointedly to decide whether the proof in this case is sufficient of itself to sustain a conviction for the crime here charged; yet, taking into consideration the character of the prosecutrix, the manner, time, place and circumstances under which the alleged assault was made, we would suggest the most careful consideration and long hesitancy upon the part of the court below before refusing an application to vacate the verdict in the event a second jury can be found, willing, upon the same evidence, to duplicate the former finding herein.

The judgment and sentence of the court below is reversed.