## STATE vs. WILSON

(No. 1099, September 15th, 1924; 228 Pac. 803.)

CRIMINAL LAW—RAPE—PENETRATION—INTENT TO COMMIT—EVIDENCE —INSTRUCTIONS — WITNESSES — IMPEACHMENT — CIRCUMSTANTIAL EVIDENCE—PROSECUTING ATTORNEY—WAIVER.

1. Penetration, though to no particular depth, must be proved beyond reasonable doubt.

2. In prosecution for assault with intent to rape, specific intent to penetrate sexual organs of female, at least to some extent, intent to commit rape being of essence of offense charged, must be proved.

3. To convict of charge of assault with intent to rape, intent to produce emissio seminis, and actual production thereof, without intent to penetrate, is insufficient.

4. In prosecution for assault, with intent to rape 5 year old girl, evidence *held* to present question of fact as to whether defendant intended to penetrate prosecutrix's sexual organ, or produce emission without penetration.

5. In prosecution for assault with intent to rape, intent to penetrate being doubtful, refusal to instruct that there can be no carnal knowledge without penetration *held* error; no instruction having been given on elements of carnal knowledge.

6. In prosecution for assault, with intent to rape 5 year old girl, in which mother testified as to previous similar attacks, evidence that she borrowed money from defendant a week or so after claimed assaults was admissible to impeach her.

7. Exclusion of testimony, offered to impeach state witness, alleged to be in conspiracy with other state witnesses to deprive defendant of his property by false accusation, that witness had stated that family of prosecuting witness would get all of defendant's property *held* not error; it not appearing that witness intended to aid in getting such property.

8. Interest, relationship, bias, and corrupt testimonial intent of a witness may always be shown, either on cross-examination or by extrinsic testimony.

9. That witness against an accused, either alone or conjunctively with another, is attempting to unjustly deprive accused of his property, shows an evil motive, discrediting her.

10. In prosecution for assault with intent to rape, testimony of prosecutrix relating in detail what defendant did, from which conclusion as to intent could be drawn, *held* direct evidence, within rule governing necessity of instructions on circumstantial evidence.

11. Where there is both direct and circumstantial evidence, request for instruction on circumstantial evidence, which assumes that state relies on such evidence alone, is properly refused.

12. In the absence of evidence justifying it, prosecuting attorney's argument, intimating that defense witnesses had been bribed, was improper.

13. While there may be cases where misconduct of prosecuting attorney in argument is so flagrant as to warrant reversal, in absence of objection, in general, failure to make timely objections waives error.

14. In prosecution for assault with intent to rape, where evidence justified conviction of assault, and perhaps assault and battery, affirmative charge for defendant was properly refused.

NOTE—See Headnotes (1) 33 Cyc. pp. 1422, 1486; (2) 33 Cyc. p. 1432; (3) 33 Cyc. p. 1432; (4) 33 Cyc. p. 1501; (5) 33 Cyc. p. 1504; (6) 40 Cyc. p. 2581; (7) 40 Cyc. p. 2677; (8) 33 Cyc. p. 1455; 40 Cyc. pp. 2651, 2652, 2657, 2662; (9) 33 Cyc. p. 1455; (10) 16 C. J. p. 1009; (11) 16 C. J. p. 1009; (12) 16 C. J. p. 900; (13) C. J. p. 914.

APPEAL from District Court, Natrona County, CYRUS O. BROWN, Judge.

J. S. Wilson was convicted of assault upon a female under the age of 18 years with intent to have carnal knowledge, and he appeals.

*George W. Ferguson* and *Robert N. Ogden, Jr.* for appellant.

The act not having been completed defendant's intent must be determined from the circumstances; 22 R. C. L. 1233; Com. v. Merrill, 14 Gray, Page 415, the court erred in refusing to instruct on circumstantial evidence, Gardner v. State, 27 Wyo. 316; where the evidence is both circumstantial and direct, it is error to refuse a requested instruction on circumstantial evidence, 16 C. J. 1008, State v. Andrews, (Kans.) 61 Pac. 808; State v. Woolard, (Mo.) 20 S. W. 27, Kollock v. State, (Wis.) 60 N. W. 817; Perdue v. State (Ga.) 54 S. E. 820; each party is entitled to have their respective theories submitted under proper instructions, 14 R. C. L. 799, Reed v. State, (Okla.) 103 Pac. 1070; refusal to give requested instructions defining carnal knowledge or sexual intercourse was error, Maxey v. State, 52 S. W. 2; 2nd Bishop's Crim. Law 1127; State v. Frazier, (Kans.) 39 Pac. 819; State v. Grubb, (Kans.) 41 Pac. 951; the prosecuting attorney was guilty of misconduct in his argument to the jury, 22 R. C. L. 104, State v. Baker, (Kans.) 46 Pac. 947; State v. Fischer, (Mo.) 27 S. W. 1109; People v. Fielding, (N. Y.) 53 N. E. 497; complaining witness was incompetent as a witness, 5804 C. S., such testimony is to be received with caution, 40 Cyc. 2200; Crosby v. State, 93 Ark. 156, 16 Am. Ency. Law 270, 28 R. C. L. 461; there was evidence that the charge was invented to seek defendant's property; it is always proper to impeach a witness, 33 Cyc. 1455; the court ruled out impeaching testimony offered by defendant as against witness Laney; the court erred in limiting the number of character witnesses called by defendant, Wharton (Crim. Law.) 11th Ed. 536, 16 C. J. 584; the constituent elements of rape are well established, 1 Wharton (Crim. Law.) 874; intercourse must be intended, 33 Cyc. 1435-1495; Draper v. State, 57 S. W. 655; People v. Dowell, (Mich.) 99 N. W. 23; State v. Dalton, (Mo.) 17 S. W. 700; Herrick v. Terr., (Okla.) 99 Pac. 1096; there must be something more than indecent liberties; impotency is a defense; impotency is defined as absence of procreative power, 21 Cyc. 1742; 4 Words &

Phrases 3443; impotency of defendant was established by evidence offered by the prosecution.

*David J. Howell*, Atty. Gen., *Vincent Carter*, of Counsel.

The order overruling motion for new trial confers no jurisdiction to review questions not properly raised on appeal, Whitman v. Weller, 39 Ind. 519, 4 C. J. 1784; refusal of a requested instruction is not error if the point be otherwise covered, or not pertinent to the issues, Horn v. State, 12 Wyo. 80; Arnold v. State, 5 Wyo. 439; Cook v. Terr., 3 Wyo. 110; charges of misconduct of prosecuting attorney cannot be first raised on appeal, Burdoin v. Trenton, 116 Mo. 358; Co. v. Ry. Co., (Ky.) 51 S. W. 805; no exception was reserved to denial of defendant's motion that jury be instructed to disregard the testimony of Eunice Cook, leaving nothing to review, Atchinson v. Arnold, 11 Wyo. 351; Impr. Co. v. Bradley, 6 Wyo. 171; alleged error in ruling on the testimony of Mrs. Rhoades is not properly assigned, 6408 C. S., defendant relies on the order made by the trial court, made many days after the verdict was rendered, allowing exceptions to all adverse rulings which was included in the denial of the motion for new trial; this order does not present questions for review, unless exceptions were taken and noted at the time; the court had authority to limit the number of character witnesses, State v. Albanes, 190 Me. 199; State v. Rutherford, 152 Mo. 124; People v. Arnold, 248 Ill. 169; the evidence was both direct and circumstantial; aside from the testimony of the child, the offense is proven by all the circumstances of the case, much of which is admitted by defendant; penetration, however slight is sufficient to justify a verdict of rape; Ross v. State, 16 Wyo. 285; defendant made no attempt to establish impotency as a defense; the direction of a verdict is discretionary, Breese v. U. S., 106 Fed. 680; Bishop v. State, 18 Ga. App. 714; Bennett v. State, 68 Fla. 494.

BLUME, Justice.

The defendant J. S. Wilson was convicted of an assault upon one Eunice Rachel Cook, under the age of 18 years, with intent to have carnal knowledge of her, and he appeals.

The defendant was 63 years of age at the time of the trial; and Eunice Rachel Cook, whom we shall call the prosecutrix, was a child of five years of age according to her own testimony, and seven years of age according to the testimony of her mother. The assault is alleged to have occurred in Natrona County on September 18, 1921. While we are reluctant to go into the details of the sordid testimony disclosed by the record, yet on account of the questions raised in the case, it becomes necessary to do that, although we shall do so as briefly as possible. The testimony on behalf of the state, aside from that of the prosecutrix and that given by the physicians who examined her, was given by the father and mother of the prosecutrix and by Mr. and Mrs. Laney who lived in the same house with the Cooks. The home of the latter, on the outskirts of Casper, was close to that of the defendant, who seems to have had the only well in the neighborhood, and children, including prosecutrix, frequently played about the defendant's home and frequently got water from the well. It seems from the state's testimony that some time prior to the alleged crime and during the month of August, 1921, suspicion on the part of the Cooks and the Laneys, as a result of statements by the prosecutrix, fell upon the defendant of having committed assaults on the child similar to that with which he stands charged. On Sunday morning, September 18, 1921, the girl was suspected, by the Laneys, to be in the defendant's home. Mr. Laney, apparently without knocking, tried to open its entrance door, but finding it locked, tried to force it open, but apparently failed. He thereupon knocked and "about three minutes" thereafter, the defendant came to the door and said: "Mr. Laney, we can settle this without going into court." Three buttons on the defendant's pants were unbuttoned and he appeared nervous.

The girl was found in the bedroom of defendant's house and was taken home. Laney tried to put defendant under arrest, but the latter refused to go and peace officers were thereupon called. But before their arrival the defendant went to Cook's house and stated in effect that he would "settle matters" without going into court. In his presence the prosecutrix stated that defendant picked her up, put her on a chair, raised her clothes, took "his naughty thing out and put it down by mine and wet on me." Upon examination of the girl, the underwear was found to be unbuttoned and torn at the crotch and some spots of a thick substance were found on her skirt and underwear.

The prosecutrix testified that defendant "picked me up by my arms and took me in the bed room and he lifted up my dress and he took his out and unbuttoned mine and put his down to mine;" that he did so after placing her on a chair; that he shut the door and locked it; that after he heard a noise at the door, he buttoned up his pants; that five times previously he did the same thing that he did on September 18, 1921, and that he always put her on a chair to do so. The witness testified on cross-examination that defendant told her not to go into the house and threatened her with a "spanking" if she did so; that defendant had always been kind to her; that she went into the house contrary to defendant's order. She rambled on in her testimony in her childish way and testified to some impossible. things, for instance, that defendant during the time that he was in jail made an assault on her similar to that to which she had testified. On some facts she flatly contradicted herself. And the following questions and answers appear in the record: "Q. Did he injure you or hurt you anyway; give you pain? A. No. Q. Did he attempt to hurt you any way or give you any pain? A. No. Q. Didn't hurt you a bit? A. No."

Dr. Dacken and Dr. O'Connell made an examination of the child soon after the occurrence mentioned. A gelatinous substance, testified to by Dr. O'Connell as containing

spermatazoa, and about one-fourth cubic centimeter in amount was found just inside the lips of the girl's vagina, which, as Dr. O'Connell testified, could have entered without penetration, by being deposited in the neighborhood of the vagina. There were spots of apparently the same substance on the underwear. Dr. Dacken further testified: "There was no evidence whatever of external violence. There were no bruises or lacerations; no hemorrhage; nothing whatever that would indicate violence of any sort" and no scratches whatever were found; that when he examined the girl previously in August, supposedly after an attempted rape, he found nothing. Dr. O'Connell testified that the girl's hymen was intact, and that "there was not anything wrong with the child's sexual organ."

1. Passing over the testimony on behalf of defendant, who produced testimony flatly contradicting some very material testimony for the state and who denied the acts charged against him and claimed a conspiracy on the part of the Cooks and the Laneys to ruin him and get his property, it is clear that a question of doubt was raised even under the evidence for the state as to the intent of the defendant to penetrate the sexual organs of the child, in so far as able, since these organs, tender as they must have been, showed no bruises, scratches or evidence of violence, and since, had the defendant intended to penetrate them, as far as possible, he apparently had the opportunity to do so. And it is also urged by counsel for defendant, that inasmuch as the testimony of the girl shows that the defendant made several similar assaults upon her, and all the evidence showing that there was no attempt to penetrate at any time, that the jury could not possibly have been justified in finding an intent to that effect at the time in question. The brief of counsel for defendant states:

"The state maintains the defendant is a victim of erotic fetichism; that the mere touching of his private organ to the child's underwear or person induced an orgasm. And

yet, so maintaining, the state secured a conviction on the charge of assault with intent to commit rape.''

There are some things in the record which seem to justify the statement that such was the theory of the State. Let us, therefore, examine it in the light of what has been said upon the subject.

All the authorities agree that on a prosecution for rape, the fact of penetration, to some extent at least, must be proved beyond a reasonable doubt. There must be a res in re, though to no particular depth. 33 Cyc. 1486, 23 Eng. & Am. Ency. of Law 851, 852; People vs. Howard, 143 Cal. 316, 76 Pac. 1116; Colombo vs. State, 2 Boyce (Del.) 28, 31; 78 Atl. 595; State vs. Williams, 3 Boyce (Del.) 102, 106; 80 Atl. 1004; Hardtke vs. State, 67 Wis. 552, 30 N. W. 723; White vs. Com. 96 Ky. 180, 28 S. W. 340; Walker vs. State, 12 Okl. Crim. Rep. 179, 153 Pac. 209. Hence it follows, as a matter of course, that in a prosecution for assault with intent to rape, in order to find the defendant guilty of that crime, there must be shown, beyond a reasonable doubt, a specific intent to penetrate the sexual organs of the female at least to some extent. The intent to commit the offense is of the essence of the crime which, it is said, should be kept constantly before the jury's mind. 33 Cyc. 1432, 23 Eng. & Am. Ency. of Law 865; Hunter vs. State, 29 Fla. 486; 10 So. 730; Sparkman vs. State, 84 Fla. 151, 92 So. 812; Curry vs. State, 4 Tex. App. 574; State vs. McCune, 16 Utah, 170, 51 Pac. 818. In 33 Cyc. 435, it is said of an assault with intent to commit rape:

''It is also necessary that there shall be an intent to have intercourse with the girl, and not merely to take indecent liberties with her person.''

In Sparkman vs. State, supra, it was said:

''It was an extremely indecent assault, and one evincing gross immorality on the part of the plaintiff in error. But

not every indecent assault constitutes an assault with intent to rape.''

In Bozeman vs. State, 34 Tex. Crim. Rep. 503, 31 S. W. 389, the court speaking of the crime of attempt to rape a girl 8 years old said:

''Nothing short of a determined attempt to have carnal knowledge of the alleged injured female suffices to constitute this offense, and no matter what else the defendant may have been doing of an improper character, if he was not endeavoring to accomplish the act of carnal intercourse, he could not be convicted of this offense.''

In People vs. Dowell, 136 Mich. 306, 99 N. W. 23, it was said:

''The intent is the gist of the offense, and every laying on of hands upon a female under the age of consent, even though improper, does not necessarily imply an intent to have sexual intercourse. Indecent liberties may be taken with a child without any such intent.  *  *  *  In case of this kind it is the duty of the court to carefully instruct the jury as to the distinction between improper liberties with the intent to have sexual intercourse and improper liberties without such intent.''

To the same effect is State vs. Perkins, 31 S. D. 447, 141 N. W. 364.

In Williams vs. State, 15 Ga. App. 306, 82 S. E. 936, it was said:

''And so the only real question in this case is whether the accused intended to attempt sexual connection.  *  *  *  unless it clearly appears that the intent of the accused was to have sexual intercourse, he could not lawfully be convicted of assault with intent to rape, no matter how aggravated the character of the assault and battery, which is an inseparable ingredient of rape.''

In Carter vs. State, 44 Tex. Crim. Rep. 312, 70 S. W. 971, it was said:

"As a prerequisite to assault with intent to rape upon a girl under the age of 15 years, there must be an assault, and that assault must be such as the facts and circumstances indicate beyond a reasonable doubt the purpose and intent on the part of the accused at the time to have carnal knowledge of the girl."

In the case of Nobat vs. State, 91 Tex. Cr. R. 468, 239 S. W. 966 the court said:

"It is essential that a specific intent to commit rape be established by the testimony, and it must go beyond the mere possibility of such intent. * * * The fact that the conduct attributed to the appellant was atrocious and merited punishment cannot take the place of proof establishing the elements of an assault with intent to rape. The court is not justified in sanctioning a conviction where the evidence falls short of the requirements contemplated by the statute defining the offense. Dockery vs. State, 35 Tex. Crim. Rep. 489, 34 S. W. 281."

The case of Enfield vs. State, 94 Tex. Cr. Rep. 226, 250 S. W. 162, is appropos in which the court said:

"The appellant was an old man, and the circumstances detailed by the state witnesses were such as to inflame the minds of the jury against him. In other words, there would have been great reluctance on the part of the jury to acquit him. Had the court, however, complied with the request of the appellant to instruct the jury upon the law of assault with intent to rape and aggravated assault, the verdict might have been for one of those grades of offense. If the appellant's conduct went no further than indecent familiarity, his offense was no more than an aggravated assault."

In the case of State vs. Bowers, 239 Mo. 431, 144 S. W. 97, the court said:

"Either he had no criminal intent, or he lacked the means of carrying it into effect. The prosecuting witness testifies that the private of defendant, although exposed, did not touch her person. It is clear, therefore, that no attempt was made by him to consummate the act. It does not follow, because the defendant was guilty of abominable and lecherous conduct, violating one of the most sacred obligations resting upon men—that is to protect the purity of young girls—that he was guilty of an attempt to rape. Too much cannot be said in reprobation of a man who would deliberately aid a young girl on the downward path, even though she showed herself quite willing to pursue it; but it is our duty to see that a man accused of crime be accorded all the rights which the law allows him, no matter how heinous the charge upon which he is tried."

In the case of Herrick vs. Territory, 2 Okl. Crim. 74, 99 Pac. 1096, the court said:

"That the defendant may have been guilty of an assault upon the complainant of a most indecent character may be true, but it matters not how reprehensible his conduct may have been this court cannot allow a judgment of an attempted rape to stand against him in the absence of evidence to that effect. If such had been his purpose in this case, nothing intervened to stop him or prevent his carrying such a design into effect.  *  *  *  But there must have been an intention to have carnal intercourse with a female before an attempt to rape can be committed. It is one thing to take indecent liberties with a female. It is an entirely different thing to attempt to rape her. The strongest view of the prosecution in this case shows indecent familiarities of a reprehensible and infamous character, which cannot be too severely condemned and punished, but

this constitutes another and different offense from that for which defendant was convicted.''

And in the case of Draper vs. State (Tex. Crim. R.) 57 S. W. 655, the court, speaking of facts somewhat similar to those in the case at bar, said:

''It may be that what the prosecutrix says may not be altogether false but partly true, to-wit, it may be true that appellant may have had a morbid sexual desire; he may have fondled prosecutrix; he may have manipulated her parts with his hands; but evidently he did not intend to penetrate her female organ with his penis, else with the opportunity he had, undoubtedly he would have accomplished this. As stated before, he may have been afflicted with that form of sexual disease known as fetichism, where the victim, laboring under a venereal excitement, simply desires to gratify his lust by contact of his genital organs with any part of the body of a woman. Certainly there was a failure in the testimony to show that defendant did. more than this.''

Illustrative as some, at least, of the cases cited are, the following two are still more so. In the case of White vs. Commonwealth, 96 Ky. 180, 28 S. W. 340 the trial court in the case of rape, instructed the jury, among other things as follows:

''To have carnal knowledge with the infants consent, there must have been some penetration, however slight, if the parts of the infant were sufficiently developed to admit it; but if not so developed, then the pressing or rubbing his private parts against her private parts for the purpose of producing an emission, was sufficient to constitute carnal knowledge.''

The court held that the instruction was erroneous and extremely prejudicial to the defendant, in that it author-

ized the jury to find him guilty of carnal knowledge, wheth-
er penetration was shown from the evidence or not. The
application of that case to the case at bar is clear; in that
according to the former case, it must be shown that there
was an intent to penetrate, and not merely rub the private
parts of the defendant against the private parts of the fe-
male for the purpose of producing an emission. The case
of State vs. Matsinger (Mo. Sup.) 180 S. W. 856 is even
more in point. The syllabus in that case is as follows:

"In a prosecution for assault with intent to rape a girl
of nine, where the testimony discloses that defendant mere-
ly raised the child's dress and placed his private parts
against hers, not hurting prosecutrix, a charge of common
assault should be given."

The court, in part, said as follows:

"It is well settled, that in order to warrant a conviction
for an assault with intent to rape, it must be shown that it
was the defendant's intention to accomplish this purpose.
The fact that the prosecutrix is under the age of consent
does not dispense with the necessity of charging and prov-
ing one of the essential elements of the offense, that is the
intention with which the assault was made. * * * In-
dependent of the intent with which the assault was made,
defendant's conduct, if prosecutrix is to be believed, was
lascivious, rakish and reprehensible, and cannot be too se-
verely condemned, and for which just legal punishment
should be meted out; but if, in point of fact—and this is
for the jury—he did not intend to have intercourse with the
child, he should not be convicted upon this charge, but
should be punished for the offense of which he is actually
guilty, and if the punishment prescribed by the legislature
for common assault is not sufficient, the court cannot rem-
edy this."

The foregoing cases, showing a variety of indecent liberties taken with a female, conclusively demonstrate the fact that what is claimed to have been the theory of the state herein, was entirely erroneous.    True, an actual emisio seminis was shown in this case, which, perhaps, differentiates this case somewhat from the other cases.    But the difference is not substantial.  ''Emissio seminis,'' it is said in Pennsylvania v. Sullivan, 1 Addison (Pa.) 142, ''of itself makes not rape without actual penetration.''  ''Emission without penetration,'' says Wharton on Criminal Law (11th Ed.) Vol. 1 p. 74, ''is not sufficient to constitute the consummated crime of rape.''  ''Actual contact merely of the sexual organ of the male with the organ of the female, or emission without penetration is not sufficient to constitute rape.''    23 Eng. & Am. Ency. of Law 852.    Hence, in a charge of an assault with intent to commit rape, an intent to produce emissio seminis and the actual production thereof, without the intent to penetrate, is not sufficient.    The evidence in the case at bar strongly and peculiarly presented a question of fact as to whether or not the defendant intended to penetrate the sexual organ of the prosecutrix, or simply intended to produce an emission without penetration.    To call that specific point to the attention of the jury, the defendant asked the trial court, in two different instructions offered, to instruct the jury that there can be no carnal knowledge without pentration at least to some extent. The court refused to give such instruction, and none was given on the elements of carnal knowledge.    In this, we think, there was error.    It was held in State vs. Grubb, 55 Kan. 678, 41 Pac. 951, and Davis vs. State, 43 Tex. 189, that where it became a question of doubt, in a case of rape, as to whether or not penetration was accomplished, an instruction asked to the effect that some penetration, at least, is necessary to constitute carnal knowledge, should have been given.    See also 33 Cyc. 1504.    So in the case at bar, the question of intent to penetrate became of vital importance, and the defendant was entitled to have a specific in-

struction given to the jury calling its attention to this point. An instruction, in fact, more directly applicable to the case in hand might well have been asked. The instruction offered, however, would have called the jury's attention at least indirectly to the necessity of an intent to penetrate, and should have been given in the absence of a more specific one.

2. Mrs. Cook, mother of the child, testified that she knew that similar attacks had been previously made by the defendant on the girl; that on August 18th, 1921, the child had her underwear torn and a thick substance was found thereon; that she was informed by the girl that the defendant was responsible for this condition and that Dr. Dacken was called in at that time to make an examination of the child and her clothing. On Cross-examination of this witness she was asked as to whether or not she had not borrowed money from the defendant about September 1st, 1921. An objection to the question was sustained. Defendant thereupon offered to prove that she went to defendant on August 29, explained her financial condition to him and asked him if he could not let her have a little money; that defendant then gave her a check for ten dollars; that some two weeks later she again went to him and again asked him for financial help and that defendant at that time gave her a ten dollar bill. This offer was objected to and the objection sustained. We think that the ruling was wrong. Such evidence clearly had a tendency to discredit the foregoing testimony of this witness, who was the mother of the child and who, if she had reasons to believe that the defendant had made a criminal assault on her infant daughter, would not be likely, or at least hesitate, to go to the person guilty of such criminal assault to ask for financial assistance.

3. The defendant offered to prove by the witness Mrs. Rhoades that Mrs. Laney had told her of a prior assault by defendant on prosecutrix similar to the one in question and had stated that the Cooks would get everything that Wil-

son had, but the court refused to let this be shown. Mrs.
Laney had previously been interrogated in regard thereto,
but had denied the statement. The theory of the defense
was that the Cooks and the Laneys were in a conspiracy to
obtain the defendant's property by accusing him of the
crime of which he stands charged. The foregoing statement
of Mrs. Laney that the Cooks would get all the property
would, standing alone, seem to be merely an opinion as to
what would happen, and, therefore, irrelevant. Willis v.
State, 13 Okl. Crim. R. 700; 167 Pac. 333. The rule of law
undoubtedly is that interest, relationship bias and corrupt
testimonial intent of the witness may always be shown eith-
er on cross-examination or by extrinsic testimony. Such
testimony is pertinent; it aids in the arrival of the correct
decision of the ultimate fact to be proven and is not collat-
eral in the sense that the cross-examining party is bound by
the answer. Wigmore on Ev. (2nd Ed.) Sec. 1005; Helwig
v. Lascowski, 82 Mich. 619, 623; 46 N. W. 1033, 10 L. R. A.
378; Strong v. People, 24 Mich. 1, 33 Cyc. 1455; 40 Cyc.
2583, 2561-2; Curby v. Territory, 4 Ariz. 371, 42 Pac. 953;
People v. Knight, 5 Cal. Unrep. 231 43 Pac. 6. If, accord-
ingly, it can be shown that a witness, either alone or in con-
junction with others, is attempting to unjustly deprive an-
other of his property, an evil motive is shown discrediting
the witness. Such attempt it is true, can generally be
shown only by indirect methods and by circumstances, and
trial courts should be careful not to exclude testimony
which, though of little or no importance when standing by
itself, would, nevertheless, be a chain in the circumstances.
The foregoing statement of Mrs. Laney, however, does not
of itself show that she was aiding or intended to aid the
Cooks in getting any of the defendant's property, and we
find no other testimony to that effect in the record. Hence
we cannot say that there was error in the ruling of the
court.

o

4.   The defendant asked the court to give the following instructions on circumstantial evidence, which the court failed to do, and none on that subject was given:

"Instruction B.   The court instructs the jury that evidence is of two kinds; direct and circumstantial.   Direct evidence is when a witness testified directly of his own knowledge of the main fact or facts to be proven.   Circumstantial evidence is proof of certain facts and circumstances in a certain case, from which the jury may infer other and connected facts, which usually and reasonably follow according to the common experience of mankind.   Crime may be proven by circumstantial evidence as well as by direct testimony of eye-witnesses; but the facts and circumstances in evidence should be consistent with each other and with the guilt of the defendant, and inconsistent with any reasonable theory of defendant's innocence."

"Instruction C.   When circumstantial evidence is relied upon to obtain a conviction of a person charged with crime, it is not only necessary that the circumstances all concur to show that the defendant committed the crime but that all be consistent with any other rational conclusion."

It is the contention of appellant that the case is entirely one of circumstantial evidence; that the intent is the gist of the crime and necessarily can, at least ordinarily, be proven only indirectly.   Counsel may be correct from a strictly logical standpoint, but their contention would lead to the conclusion that in every case where the intent is the gist of the crime an instruction on circumstantial evidence should be given.   We have not been cited to any case which so holds.   The prosecutrix in this case gave what we should consider direct testimony, relating in detail what defendant did, and from which the conclusion as to the intent could be drawn, and if that were the only evidence in the case, we are clear that no instruction on circumstantial evidence would be necessary.   16 C. J. 1009, 1010; Roberts v. State,

44 Tex. Cr. R. 267, 70 S. W. 423; Dobbs v. State, 51 Tex. Crim. 629, 103 S. W. 918; Williams v. State, 58 Tex. Crim. 82, 124 S. W. 954. Thompson on Trials, Sec. 2505.

There was, however, also considerable circumstantial evidence in this case. The authorities do not appear to be harmonious as to whether or not in such case an instruction on such evidence should be given. The courts of Kentucky and North Carolina do not consider such an instruction of any value in any case. Smith v. Com., 140 Ky. 599, 131 S. W. 499; State v. Neville, 157 N. C. 591, 72 S. E. 798. It is quite generally held that where the evidence is mainly direct, and particularly if sufficient to convict, no such instruction is necessary even though there is circumstantial evidence corroborating the former. 16 C. J. 1008-9. People v. Lapara, 181 Cal. 66, 183 Pac. 545. Some of the courts appear to go farther and seem to hold that if there is any direct testimony respecting the corpus delicti, an instruction on circumstantial evidence is properly refused; or as otherwise stated, that no such instruction is necessary unless the state relies exclusively on circumstantial evidence. Underhill Crim. Ev. Sec. 6; State v. McKnight, 21 N. M. 14, 153 Pac. 76; Star v. State, 9 Okl. Crim. 210, 131 Pac. 542; State v. Foster, 14 N. D. 561, 105 N. W. 938; State v. Marston, 82 Vt. 250, 72 Atl. 1075; Anderson v. State, 133 Wis. 601, 114 N. W. 112; State v. Johnson (Mo. Sup.) 252 S. W. 623; Wood v. State, 157 Ark. 503, 248 S. W. 568; State v. Harris, 66 Mont. 25, 213 Pac. 211. On the other hand it is held in Kansas that where the evidence is chiefly circumstantial, and sufficient, if believed to convict, such an instruction should be given even though there is some corroborative testimony which is direct, since the jury might disbelieve the latter. State v. Andrews, 62 Kan. 207, 61 Pac. 808; State v. Truskett, 85 Kan. 804, 118 Pac. 1047; State v. Miller, 90 Kan. 230, 133 Pac. 878, Ann. Cas. 1915B, 818. So some of the authorities hold that a requested instruction on circumstantial evidence, if proper, should be given in any case where the evidence is circumstantial in

whole or in part; (Thompson on Trials, Sec. 2500; Allen
v. State, 14 Ga. App. 115, 80 S. E. 215); particularly if
some essential fact or issue is shown by circumstantial evi-
dence alone. Benson v. State (Tex. Crim.) 63 S. W. 633;
Cox v. State, 92 Tex. Cr. R. 497, 244 S. W. 605; Goforth v.
State, 92 Tex. Cr. R. 200 241 S. W. 1027; Miller v. State
88 Tex. Cr. R. 69, 225 S. W. 379; 12 A. L. R. 597; Burnam
v. State, 61 Tex. Crim. 616, 135 S. W. 1175; State v.
Swarns 294 Mo. 139, 241 S. W. 934. So too, it is held, that
where the direct testimony stands naturally discredited, as
by impeachment, contradiction or otherwise, an instruction
on circumstantial evidence should be given, if requested.
State v. Woolard, 111 Mo. 248, 20 S. W. 27; Perdue v. State,
126 Ga. 112, 54 S. E. 820; Middleton v. State, 7 Ga. App.
1, 66 S. E. 22. See also State v. Andrews, supra, and Cohen
v. State, 32 Ark. 226, 231. It is claimed that on account of
the extreme youth of the prosecutrix and on account of her
inconsistent and contradictory statements, her testimony
stands naturally discredited, and that the rule announced
in the last mentioned cases should be applied. We need not
decide whether that rule is sound or not, for it is said in the
Perdue case, that the charge to be given in such case is not
broadly one without regard to the direct testimony, but a
qualified charge on circumstantial evidence "to be applied
only if the jury disbelieve the direct evidence." The addi-
tion of such qualification was held to be proper in the case
of State v. Allen, 129 La. 733, 56 S. 655, Ann. Cas. 1913B
454. The instructions asked in the case at bar were not so
qualified. Though instruction B mentions direct evidence
in the first two sentences, it may be possible that the re-
mainder deals mainly, if not altogether, with circumstantial
evidence as though that were the only evidence in the case.
The same instruction seems to have been so considered in
State v. Hillman, 142 Mo. App. 510, 127 S. W. 102. In-
struction C is framed on the assumption that the state re-
lies exclusively on circumstantial evidence for conviction.
Similar instructions have been condemned at numerous

times in cases where, as here, the evidence was both direct as well as circumstantial: Blanton v. United States, 213 Fed. 320; 130 C. C. A. 22, Ann. Cas. 1914D, 1238; People v. Burns, 121 Cal. 529, 53 Pac. 1096; People v. Lonnen, 139 Cal. 634, 73 Pac. 586; People v. Daugherty, 266 Ill. 420, 107 N. E. 695; State v. Brandell, 26 S. D. 642, 129 N. W. 242; Vaughn v. State, 57 Ark. 1; 20 S. W. 588; Coleman v. State, 87 Ala. 14, 6 So. 290; Hall v. State, 130 Ala. 45, 30 So. 422; McCoy v. State, 170 Ala. 10, 54 So. 428. We are accordingly not prepared to say that the court erred in refusing to give the instruction asked, though they are probably correct as an abstract proposition of law.

5. Misconduct of the prosecuting attorney in his closing argument, by improper insinuations and by applying abusive epithets to defendant, is assigned as error. Some, at least, of the points made by counsel for defendant are well taken. The prosecuting attorney, for instance, intimated that witnesses for defendant had testified for money, or, in other words, that they were bribed. We find nothing in the record warranting such insinuations, and the making of it was improper. 16 C. J. 900 and cases cited. No objections, however, were made at the time, to any of the statements of the prosecuting attorney. While there may be cases where the misconduct of such prosecuting attorney is so flagrant that the court would be warranted to reverse even in the absence of such objections, the general rule is that the failure to interpose timely objections, giving the trial court an opportunity to make a ruling and cure an error, if possible, will be treated as a waiver. Klink v. People, 16 Colo. 467, 27 Pac. 1062, and see cases collated in note 46 L. R. A. 641. We cannot say that we should be warranted to reverse the case at bar in the absence of such timely objections, but it may not be amiss, in view of a further trial, to call attention to the rule of law as laid down in 22 R. C. L. 104, which is as follows:

''The prosecuting attorney, in a criminal case, represents the people, and having no responsibility, except fairly to discharge his duty, should put himself under proper restraint, and should not, in his remarks before the jury go beyond the evidence or the bounds of a reasonable moderation. If he lays aside the impartiality that should characterize his official action to become a heated partisan, and by vituperation of the prisoner and appeals to prejudice seeks to procure a conviction at all hazards, he ceases properly to represent the public interest. * * * If a conviction in a criminal case follows an improper and dangerous appeal to the prejudice of the jurors, made by the prosecuting attorney, and it is reasonably certain that his course brought about such result, the judgment will be reversed for such error whenever it is raised by a proper exception.''

6. It is assigned as error that the court failed to comply with defendant's request to instruct the jury to find the defendant not guilty. The action of the court, however, was right, if for no other reason than that the jury might under the evidence, have found the defendant guilty of an assault, and, perhaps, of an assault and battery. Pitman v. State, 148 Ala. 612, 42 So. 993. We need not determine as to whether or not the information in this case is sufficient to include the latter crime in the crime charged, but as to its inclusion therein generally see Tiller v. State, 101 Ga. 782, 29 S. E. 424; Sutton v. State, 123 Ga. 125, 51 S. E. 316; State v. Powers, 181 Ia. 452, 164 N. W. 856; People v. Ricketts, 108 Mich. 584, 66 N. W. 483; Com. v. Thompson, 116 Mass. 349.

In view of another trial, we deem it improper to discuss the question of the alleged insufficiency of the evidence to sustain the verdict. Other questions discussed in the briefs will probably not arise again in the further trial of the case.

For the reasons mentioned herein, the judgment herein is reversed and the cause remanded for a new trial.

*Reversed and Remanded.*

POTTER, Ch. J., and KIMBALL, J., concur.