Keith Edwin **RHODES**, Appellant,
(Defendant below),

v.

The **STATE** of Wyoming, Appellee,
(Plaintiff below).

No. 3777.

Supreme Court of Wyoming.

Dec. 22, 1969.

Floyd R. King, Jackson, for appellant.

James E. Barrett, Atty. Gen., Frederic C. Reed, Asst. Atty. Gen., Cheyenne, Gary E. Gowen, Deputy County and Pros. Atty., Jackson, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

On March 12, 1968, under the provisions of § 6–63, W.S.1957 (1969 Cumulative Supp.), complaint was filed in Teton County against Keith Rhodes, a 31-year-old male, for the first-degree rape of Paula Ann Nelson, a female child of eight years, the information containing five counts, for offenses on July 22, 29, August 5, 9, and

10, 1967. Prior to the trial the State elected to proceed on count three, which charged an offense committed on or about August 5, 1967. Defendant was tried by jury, found guilty of "assault or assault and battery with intent to commit rape," sentenced to a term in the penitentiary of from three to five years, and has appealed, charging four errors: (1) there was insufficient evidence to support the judgment of assault or assault and battery upon a female with intent to commit the crime of rape, (2) the court committed prejudicial error in refusing to instruct on specific intent, (3) the court erred in instructing the jury on assault or assault and battery with intent to commit rape, and (4) the court abused its discretion in allowing the prosecuting attorney to ask leading questions of Paula Ann Nelson.

Defendant had come to Jackson the summer of 1967 at which time he met Mildred Nelson, whom he had previously known at Dubois, and shortly moved into her trailer house in Jackson. At that time she had her two children residing with her, the eldest being Paula. On August 9 the director of the county welfare department visited the home, and on August 11 Paula began residing with Alene Pansy, who on August 23, married LeRoy Nelson, the child's father. Alene noticed a vaginal discharge from Paula but did nothing for a time. Later she became alarmed that the girl had a venereal disease, and after extensive questioning, Paula stated that Keith Rhodes had sexually molested her. Alene then took Paula to a doctor for examination, and was told the child did not have a venereal disease and that the doctor did not think penetration had occurred, but that the discharge was vaginitis, which could be cured relatively simply by medication and careful personal hygiene. Almost seven months after the alleged offense, the child's father signed the complaint against defendant.

## Leading Questions

As regards the contention that the court abused its discretion in allowing the prosecuting attorney to ask Paula leading questions, defendant quotes DeBaca v. State, Wyo., 404 P.2d 738, 739:

"* * * it is well settled that the control in connection with leading questions in a case is largely within the sound discretion of the court. * * * The trial court's action is not to be disturbed unless there has been an abuse of discretion * * *,"

and points to the fact that Fein v. Davis, 2 Wyo. 118, and Harris v. State, 23 Wyo. 487, 153 P. 881, cited therein, both contain situations in which the leading questions were found to be improper, contending that such was the case here. The pronouncement in DeBaca clearly indicates the wide latitude which is accorded to a trial court in this area,[1] and while leading questions asked in Fein and Harris were said to be improper, they were totally unrelated to the circumstances here shown by the record. Additionally, those appeals turned on matters other than the leading questions. We have scrutinized the transcript of the evidence in the present case with much care and find no instance in which the court failed to weigh every element concerning the propriety of the questions asked and rule fairly, leaving no reasonable ground for a charge of error concerning improper leading questions.

## Sufficiency of the Evidence

Defendant contends that the verdict of the jury was contrary to the weight of the evidence and not supported by substantial evidence, that the judgment was contrary to the preponderance of the evidence, and that as a matter of law there was reasonable doubt as to his guilt. He also maintains that the court erred in denying his

1. It has often been recognized that it is sometimes necessary to ask a child leading questions. Antelope v. United States, 10 Cir., 185 F.2d 174, 175; State v. Davis, 20 Wash.2d 443, 147 P.2d 940, 942.

motions for a judgment of acquittal made at the close of the State's case in chief and again at the close of the testimony.

Initially defendant argues that the State failed to prove that the alleged assault occurred on August 5, 1967.[2] He stresses Paula's poor recollections regarding various matters and says that in the important area concerning when the alleged rape took place she could at first not name a time and that although she eventually testified the sex act between her and Rhodes occurred "about four days before" Mrs. Lang, the director of the county welfare department, visited her, such testimony was elicited only after a leading and suggestive question, "Now prior to that time, approximately four days, prior to that time [when Mrs. Lang visited you], did anything happen to you at the hands of Mr. Rhodes," to which objection was sustained. We can agree that it was indeed unfortunate for such a question to be asked, but we do not view the matter under the circumstances here present as constituting the serious error ascribed to it by counsel, who overlooks the significance of our implied limitation in Esquibel v. State, Wyo., 399 P.2d 395, 399, that, where a *defense of alibi* is interposed, the time of the act of sexual intercourse upon which the State relies for conviction becomes material. In the instant case that defense was of course not raised since defendant admitted living in Mrs. Nelson's trailer for a month or a month and a half and said that he probably started living there during July 1967. He testified that for about three weeks he was working; that when he was not employed he was playing around town at nights, going out to dances and partying, and while Mrs. Nelson was working if the children weren't around he would look them up and tell them "to stay around the house—the trailer house and not to wander off too far." It was clear from Paula's testimony elicited before the mentioned lead-

ing question that the incident occurred during the summer of 1967 while Rhodes and she were residing in Mrs. Nelson's trailer home. Under these circumstances, we cannot say that the objectionable leading question rendered her later testimony regarding the time of the rape ineffective; and although she specified no date, our holding in State v. Koch, 64 Wyo. 175, 189 P.2d 162, 166, makes it clear that the time of the occurrence as testified by the witness is not subject to challenge.

Defendant argues that the crime for which he was convicted was not proved by competent evidence beyond a reasonable doubt and insists that the verdict of the jury was a compromise verdict based upon their confusion and mistaken belief as to the applicable law. He states that the girl's testimony, even if it were to be believed, pointed toward a first-degree rape rather than an assault with intent to commit rape while the doctor who examined her some months later stated that because of the smallness of her vaginal opening it would not have been possible for penetration to have occurred, and he argues that accordingly there was absolutely no evidence upon which the verdict of guilty of assault with intent to commit rape could have been predicated. He also observes the numerous references of witnesses and counsel concerning "molesting" and the doctor's statement that vaginitis could have been caused by manipulation but maintains that a verdict based upon such statements would have to be conjectural, speculative, and unsupported by evidence beyond a reasonable doubt. Defendant cites State v. Wilson, 32 Wyo. 37, 228 P. 803, as directly in point, quoting portions at 228 P. 805, 806:

"* * * it is clear that a question of doubt was raised, even under the evidence for the state, as to the intent of the defendant to penetrate the sexual organs of the child, in so far as able, since these

---

2. Instruction 8 to the jury was that "the State has elected to prosecute this defendant for an act committed August 5, 1967, and you cannot find the defendant guilty unless you find that he did commit the offense on or about that date."

organs, tender as they must have been, showed no bruises, scratches, or evidence of violence and since, had the defendant intended to penetrate them, as far as possible, he apparently had the opportunity to do so. * * *

* * * * * *

" * * * Hence it follows, as a matter of course, that in a prosecution for assault with intent to rape, in order to find the defendant guilty of that crime, there must be shown, beyond a reasonable doubt, a specific intent to penetrate the sexual organs of the female, at least to some extent. The intent to commit the offense is of the essence of the crime, which, it is said, should be kept constantly before the jury's mind. * * *

* * * * * *

" 'It is essential that a specific intent to commit rape be established by the testimony, and it must go beyond the mere possibility of such intent * * *.' [Nobat v. State, 91 Tex.Cr.R. 468, 239 S.W. 966.]

* * * * * *

" ' * * * It is one thing to take indecent liberties with a female. It is entirely another and different thing to attempt to rape her.' [Herrick v. Territory, 2 Okl.Cr. 74, 99 P. 1096.]"

We are unconvinced that in the instant case there is a lack of evidence upon which the verdict could have been predicated. In the Wilson case we said, 228 P. at 805, there appeared to be justification for defendant's contention that:

" 'The state maintains the defendant is a victim of erotic fetishism; that the mere touching of his private organ to the child's underwear or person induced

an orgasm. And yet, so maintaining, the state secured a conviction on the charge of assault with intent to commit rape * * * *' ";

held that a charge of an assault with intent to commit rape, an intent to produce emissio seminis, and the actual production thereof, without the intent to penetrate, was not sufficient; that the trial court on defendant's request should have instructed the jury that there can be no carnal knowledge without penetration, at least to some extent; and reversed and remanded the cause for a new trial, thus deeming it improper to discuss the question of alleged insufficiency of the evidence to sustain the verdict. In the present case the trial court in accordance with the mentioned Wilson rule correctly instructed;[3] however, a strict adherence to the instruction would not, under the facts of this case, have precluded a guilty verdict. Paula testified that she knew what a male sex organ was as well as a female sex organ and knew what is meant by having sex relations with another person; that four days before Mrs. Lang's visit she was lying on the bed, did not wish to lie down, but that "Keith" made her; that she was hollering but was told by Keith to "Shut up"; that Keith had put his male sex organ inside her female sex organ;[4] that it hurt; that it hurt her "Inside," i. e., her female sex organ; that afterwards she changed her clothes because they were bloody; that the blood "came from under me"; that later she tried to go outside but that Keith would not let her; and that the next morning she told her mother "about this."

The physician who examined Paula in February and March of the following year

---

3. Instruction 5: "Carnal knowledge denotes penetration; actual contact of the sexual organs of a male and female and actual penetration into the body of the latter. Penetration means that the sexual organ of the male entered and penetrated the sexual organ of the female; mere actual contact of the sexual organs is not sufficient, the slightest penetration of the body of the female by the sexual organ of the male being sufficient."

4. Granted that such matters are unpleasant, undignified, and vulgar, we nevertheless consider that the trial court acted with unjustified false modesty by inhibiting Paula from pronouncing or even spelling the act which she said took place by the term it was known to her.

testified that the opening into the child's vagina was quite small, that he saw no evidence of tearing or dilatation, and that for those reasons he determined penetration of it had not occurred. He conceded however it would have been possible "for an intrusion to have occurred in the labial region without a disturbance of the vaginal ring. * * * the penis * * * might have been in the vulva area without disturbing the vaginal ring." The doctor indicated he couldn't say if he would have been able to observe whether there had been enough trauma to cause bleeding in the vulva area. He said that when he examined Paula she had a "small amount of swelling" and indicated that was not unusual with vaginitis.

This court said in State v. Hines, 79 Wyo. 65, 331 P.2d 605, 607 (certiorari denied 366 U.S. 972, 81 S.Ct. 1938, 6 L.Ed.2d 1261), "that there must be penetration of the genital organs of the female in order to constitute sexual intercourse." The jury in the instant case was correctly instructed that "the slightest penetration of the body of the female by the sexual organ of the male" is sufficient. Furthermore, penetration does not require an entering of the vagina or rupturing of the hymen; the crime of rape is committed if the male organ enters only the labia or vulva. State v. Snyder, 199 Wash. 298, 91 P.2d 570, 572; Holmes v. United States, 84 U.S.App.D.C. 168, 171 F.2d 1022, 1023; 44 Am.Jur., Rape, § 3. We are, therefore, unimpressed with defendant's position that:

"* * * only a completed act or acts of rape were testified to by Paula but the doctor testified that penetration would have been impossible. There was, therefore, absolutely no evidence upon which the verdict of guilty to assault with intent to commit rape could have been predicated. * * *"

Nevertheless, it is our view that testimony such as the following confused the jury as to the meaning of "the sexual organ of the female":

"Q [to Dr. McMahon] Now from your examination of Paula, did you make a

determination whether or not she had been raped? A Well,—

"BY MR. HUFSMITH: (Interrupting) Excuse me, Your Honor, I am going to object to that question as calling for a conclusion of the witness. He can describe his findings but not his conclusions as to rape.

"Q * * * in the crime of rape in the State of Wyoming, it is necessary to show penetration by the male sex organ. Were you able to determine from your examination whether or not Paula had been penetrated in this manner? A Well, the opening of the vagina was only large enough to admit a very small cotton swab, and this was only with some discomfort and there was not any evidence of teating [sic] or dilatation of the opening into the vagina, so it is my feeling that it would not have been possible for penetration to have occurred.

"Q Doctor, had there been penetration of Paula, would it have shown, in your opinion? A I think that in a child of this age, there certainly would have had to have been some dilatation and probably some tearing of the area.

"Q Doctor, assuming the fact which is in evidence here that this child had allegedly been forcibly raped on August 11th, 1967, and your examination took place February 18, 1968, from your examination could you state, had Paula Ann Nelson been forcibly raped, if your examination would have revealed it. A I believe that if she had been penetrated there would have been some scarring and dilatage of the external vaginal ring. There definitely was not. As I said, it would just admit a cue tip, which is a very small cotton swab."

Asked how he defined "penetration," the doctor answered, "insertion of the penis into the vagina." He also testified:

"Q * * * Would it have been possible for an intrusion to have occurred in the labial region without a disturbance

of the vaginal ring? Q Yes, there could have been."

Despite the proper instruction that slight penetration of the body of the female by the sexual organ of the male was sufficient, it would have been appropriate to further instruct that to constitute rape it is not necessary that the vagina be entered or that the hymen be ruptured, the entering of the vulva or labia being sufficient. This is a matter which will be referred to later.

### Refusal to Instruct

■ The defendant alleges he submitted an instruction to the court, which was not given, reading:

"You are instructed that where a specific intent is required to make an act an offense, such as charged in the information of this case, the doing of the act does not raise a presumption that it was done with specific intent. The intent must be established from the facts and circumstances established by satisfactory evidence during the trial of the case. It may be manifested by the circumstances connected with the perpetration of the offense without any positive testimony as to express intent. The question of intent is a matter for the jury to determine."

Admittedly, the record does not indicate that an objection was made to the court about the failure to give this instruction, and defendant recognizes our holding that if no objection to the failure to give an instruction appears it cannot be considered on appeal. In any event in the crime of rape no intent is requisite other than that evidenced by the doing of the acts constituting the offense charged, State v. Smith, 3 Wash.2d 543, 101 P.2d 298, 302, but defendant now argues that the failure to give an instruction on intent when this was a specific element of the offense *for which he was convicted* is fundamental error and requires a reversal of the lower court's decision or a remand for new trial. We shall address ourselves to this argument

in our discussion of the next point with which it is closely associated.

### Instruction on Intent to Commit Rape

Over the objection of the defendant, Instruction 7 was given:

"Assault or assault and battery with intent to commit rape is a lesser offense included in the charge of rape and is defined by Wyoming Laws 1911, ch. 83 Sec. 1 as follows:

"Whoever perpetrates an assault or assault and battery upon any female with intent to commit the crime of rape.

"To constitute assault or assault and battery with intent to commit rape it is not necessary to prove carnal knowledge, the essential elements being an offer or attempt to commit rape, with the present ability to do so, under circumstances creating a fear of imminent peril of being raped.

"If you have any doubt as to which degree of crime may have been committed, you should resolve it in favor of the lesser offense."

■ Defendant first maintains that the giving of this instruction constituted prejudicial error, arguing that there was no evidence presented to justify giving it. The prosecution does not directly disagree with defendant's position that where there is no evidence tending to prove the commission of a lower offense an instruction is properly refused but rather insists that under Dr. McMahon's testimony the jury would have been warranted in finding no penetration to have occurred. From a review of that witness's testimony, we find the State's position without basis. Although the doctor testified that he determined penetration of the vagina not to have occurred, that statement certainly fell short of being evidence that there had not been a penetration of the vulva or labia and thus of the female's body. It was most unfortunate that the jury was not advised the entering of the

vulva or labia was sufficient to constitute a rape. While the lack of such information was not prejudicial to the defendant, it gives substance to his position that an instruction on lesser included offenses or offenses of a lower grade or degree need not and should not be given when not justified by the information or evidence.[5] Defendant, however, raises a further and perhaps a more serious impropriety of the challenged instruction. Following its recitation of the statute defining assault or assault and battery with intent ot commit rape, it purports to state the essential elements of the crime and in so doing omits entirely the element of intent without which there could, of course, be no crime. In this respect we deem the instruction incomplete. The jury's verdict could have been properly returned only in the event they believed that had defendant consummated his intent he would have been guilty of rape. No instruction having covered the material element of intent, Instruction 7 was necessarily misleading and prejudicial to him. State v. Parmely, 65 Wyo. 215, 199 P.2d 112, 116–117. Accordingly, we reverse the cause and remand it for new trial.

Reversed and remanded for new trial.

5. State v. Goettina, 61 Wyo. 420, 158 P.2d 865, 878.