Joe Blaz SANCHEZ, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4696.

Supreme Court of Wyoming.

July 14, 1977.

Terry W. Mackey and Walter C. Urbigkit, Jr., of Urbigkit, Mackey & Whitehead, Cheyenne, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Frank R. Chapman, Asst. Atty. Gen., and E. James Burke, legal intern, Cheyenne, for appellee.

John E. Stanfield, Hugh B. McFadden, Jr., John B. Scott, Kathleen H. Fedore, and Janice I. Olson, Laramie, Amicus Curiae Committee for Wyoming Trial Lawyers Ass'n, filed brief of Amicus Curiae.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

### FACTS

On February 14, 1975, at about 5:50 a. m., appellant-Joe Blaz Sanchez, a stranger to Jill Heath, knocked on her door in Cheyenne, Wyoming. She answered and appellant asked to speak to her husband or boyfriend, but she said they weren't there. Sanchez then asked to use the phone, but Mrs. Heath refused and tried to shut the door, whereupon appellant pushed the door open and entered. Mrs. Heath ran to the phone and began dialing, but Sanchez grabbed the phone and said "Don't do that." Mrs. Heath tried to use the phone several more times, but appellant took the phone away from her saying, "I have got a gun, but I don't want to hurt you." Sanchez then grabbed Mrs. Heath and threw her on the couch, touched her on the outside of her robe and said, "Let's see what you are all about" and, "I am going to ball you." Appellant stood up and placed his hands on the front of his pants, whereupon Mrs. Heath got up to turn on the lights. Appellant grabbed her again and threw her on the couch. Mrs. Heath's baby started crying, at which time she moved to the baby's bedroom and then ran out of the house to her neighbors. She identified Sanchez as the man who entered her home, observing that he wore a white T-shirt and Levis. Mrs. Heath's neighbors and the investigat-

ing police officers testified that she was very frightened, nervous, crying and upset, and that she said a man had tried to rape her. Appellant admitted being at Mrs. Heath's apartment, but denied touching her and said he did not have or own a gun.

At about 6 a. m., on the same morning, Sanchez knocked on the apartment door of Donna Burt, at 1712 Evans in Cheyenne. She answered the door, recognized appellant, and after getting some clothes on, let him in. They conversed awhile and then appellant said he wanted to "get down and have intercourse." Miss Burt refused. She testified that she saw a gun, and that after several refusals to go to bed with appellant, he put his finger on her head and said, "If you don't go to bed with me, I will take this gun and I will put it up to your head and you will." She testified that she was nervous and scared, and that after several more refusals appellant pulled her into the bedroom, but she got away and ran to the kitchen for a drink of water. Sanchez caught up with her, however, and forcibly pulled her back into the bedroom again and proceeded to take her underwear and his pants off, whereupon he had intercourse with her. Upon completion, he put his pants on and went to the door, saying that if she called the police, his friends would get her. She showered, started crying and called a friend, whose mother called the police and took Miss Burt to the hospital. The attending physician testified that his examination of Miss Burt disclosed no evidence of cuts, bruises, etc., but showed nonmotile sperm, indicating intercourse within the last 72 hours. Her friend testified that Miss Burt looked like she had been crying and was hysterical. Sanchez admitted to being at Miss Burt's apartment that morning.

## THE ARREST—THE CHARGES—THE PLEA—THE TRIAL

Criminal complaints and warrants were issued charging appellant with rape and attempt to commit rape. The statutes under which the appellant was charged are:

"§ 6-63. Rape; degrees of rape defined.—(A) Whoever unlawfully has carnal knowledge of a woman or female child forcibly and against her will is guilty of first-degree rape, and shall be imprisoned in the penitentiary for any term not less than one (1) year, or during life." [W.S.1957, 1975 Cum.Supp.]

The attempt statute, to be found at § 6-64, W.S.1957, provides:

"§ 6-64. Attempt to commit rape.—Whoever perpetrates an assault or assault and battery upon any female with intent to commit the crime of rape, shall, upon conviction, be imprisoned in the penitentiary for not less than one year nor more than fifty years."

Following his preliminary hearing, where he was bound over to district court, defendant-appellant underwent a number of psychiatric examinations under authority of § 7-242.3, W.S.1957, 1975 Cum.Supp. On June 6, 1975, he appeared for arraignment and pled not guilty, not guilty by reason of insanity at the time of the alleged offenses and not triable by reason of present insanity. After further medical examinations, the parties stipulated that the cases be consolidated for trial. Prior to the trial, the attorney for Sanchez filed a "Motion for Trial on All Elements of Crime," wherein request was made for a single trial of all elements of the alleged offenses, including mental responsibility. It was urged that §§ 7-242.1 through 7-242.6, W.S.1957, 1975 Cum.Supp., unconstitutionally deprived Sanchez of a fair trial, due process, the right to confront witnesses and the right to effective assistance of counsel. The motion was denied, and the cases came on for trial on March 8, 1976.

At trial, the prosecution presented all of its evidence, except for testimony relating to mental responsibility, during the first procedural phase. At the close of this phase, the jury returned special verdicts finding that Sanchez unlawfully touched Jill Heath, in an attempt to have sexual intercourse with her, and that he did have sexual intercourse with Donna Burt. During the second phase of the trial, appellant's medical expert testified that appellant suf-

fered from an "explosive personality disorder" and a "reactive type of agitated depression;" that the latter was a mental illness; and that appellant lacked substantial capacity to appreciate the wrongfulness of his conduct at the time of the alleged offenses. The State's medical expert also found the mental illness but was unable to relate it to appellant's capacity at the time of the alleged offenses. At the end of the second phase, the jury returned verdicts of guilty to both charges and found appellant mentally responsible at the time of the offenses. Motions were made for judgment of acquittal and for a new trial, but these motions were denied. Sanchez was sentenced to serve three to six years on the attempt-to-commit-rape charge, and to a concurrent sentence of five to ten years on the rape charge, with provisions for treatment at the Wyoming State Hospital.

## THE ISSUES

There are other questions, but the principal issues presented to us for decision are whether the bifurcated trial procedure for the adjudication of guilt and insanity under § 7–242.5(a), W.S.1957, 1975 Cum.Supp., is violative of a criminal defendant's right to due process, and whether the statutory procedure as applied in this case violated this appellant's right to due process.

We will hold that the procedure set forth in § 7–242.5(a), supra, violates Article 1, Section 6, of the Wyoming Constitution and the Fourteenth Amendment to the United States Constitution; and we will further hold that this procedure was unconstitutionally applied to this appellant.

On appeal, appellant contends that the bifurcated procedure contained in § 7–242.-5(a), supra, which attempts to separate the issue of whether the defendant committed "the acts charged in the alleged criminal offense" from the issues of guilt and mental responsibility, results in less than a full presentation of the elements of a criminal offense, and that this, in turn, gives rise to a presumption of criminal intent. Appellant further contends that the procedure, as applied in this case, allowed the prosecution

to present all of its evidence in the first procedural phase, while at the same time it restricted appellant's ability to fully cross-examine State witnesses or effectively rebut the State's evidence. On the other hand, appellee argues that the procedure does not give rise to a presumption of intent, since guilt is not determined during the first procedural phase. The State further argues that appellant's right to cross-examine witnesses was adequately safeguarded by a protective ruling of the trial court, and that appellant failed to object to testimony presented during the first phase.

## CONSTITUTIONALITY OF § 7–242.5(a)

We will first determine whether § 7–242.-5(a), supra, is unconstitutional on its face. Section 7–242.5(a), supra, provides:

"§ 7–242.5. Trial when both not guilty and not guilty by reason of mental illness or deficiency pleas are plead; separation of issues.—(a) When a defendant couples a plea of not guilty with a plea of not guilty by reason of mental illness or deficiency, there shall be a sequential order of proof before the same jury in a continuous trial. *First*, evidence shall be heard and a special verdict taken *on whether the defendant in fact committed the acts charged in the alleged criminal offense.* If by special verdict the jury finds that the defendant did in fact commit such acts, *then evidence shall be heard on the remaining elements of the alleged criminal offense and on the issue of the mental responsibility* of the defendant. In addition to other forms of verdict submitted to the jury, the court shall submit a verdict by which the jury may find the defendant not guilty by reason of mental illness or deficiency excluding responsibility." [Emphasis supplied]

The defendant-appellant urges that this section permits a jury to make a determination of the guilt of a criminal defendant prior to hearing any defense evidence going to the defendant's mental responsibility. In other words, he argues that the statute is structured in such a way as to permit the

State to try the case against him in the first stage in the trial when he cannot defend himself, since the evidence which goes to his defense of insanity cannot be introduced until the second stage. This, he says, results in the jury's determination of his guilt before it has heard his defense and this, argues the appellant, is a denial of due process of law.

In approaching a problem involving a decision which is concerned with whether a statute is constitutional or not, we do so with certain well-established rules in mind. The law in this regard was summarized in *State v. Stern*, Wyo., 526 P.2d 344, 346–347, when we said that in determining the constitutionality of a statute,

". . . the plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary, *Shaffer v. Davidson* (Wyo.1968), 445 P.2d 13, 16; that where there is plain, unambiguous language used in a statute there is no room for construction, and a court may not properly look for and impose another meaning, *Town of Clearmont v. State Highway Commission* (Wyo.1960), 357 P.2d 470, 475; that where legislative intent is discernible a court should give effect to that intent, *Woolley v. State Highway Commission* (Wyo.1963), 387 P.2d 667, 673; that every law must be presumed to be constitutional, with all reasonable doubt resolved in its favor, *State ex rel. Board of Commissioners of Laramie County v. Wright* (1945), 62 Wyo. 112, 163 P.2d 190, 196; and that while generally speaking penal statutes are to be strictly construed, they need not be given overnarrow meaning in disregard of the obvious purpose of the legislative body, *United States v. Bass* (1971), 404 U.S. 336, 351, 92 S.Ct. 515, 30 L.Ed.2d 488."

Since no other states have statutory provisions similar to ours,[1] we must determine the constitutionality of this section on the basis of the general requirements of due process.

In *State v. Gallegos*, Wyo., 384 P.2d 967, 968, we categorized some of the principles of due process previously discussed in *Day v. Armstrong*, Wyo., 362 P.2d 137, 147–148, as follows:

"1. The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well-established element of the guarantee of due process of law.

"2. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.

"3. All are entitled to be informed as to what the state commands or forbids.

"4. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

"5. The constitutional guarantee of equal rights under the law (see Art. 1, §§ 2 and 3, Wyoming Constitution) will not tolerate a criminal law so lacking in definition that each defendant is left to the vagaries of individual judges and juries."

A procedural as well as a penal statute violates an essential principle of due process if "men must necessarily guess at its meaning and differ as to its application." See *State v. Gallegos, supra,* at 968; *Day v. Armstrong, supra,* at 147; and *Lanzetta v. State of New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888, 890.

We find that reasonable men must necessarily guess at the meaning of § 7–242.5(a), supra. Enactment of this provision was ostensibly an attempt to remedy the "problems in expert testimony which might implicate the defendant in the crime

1. For a complete discussion of other states' insanity procedures, see Comment, "Due Process and Bifurcated Trials: A Double-Edged Sword," 66 N.W.L.Rev. 327 (1971). See also, D. Lowsell and G. Hazard, Jr., "Insanity as a Defense: The Bifurcated Trial," 49 Calif.L.Rev. 805 (1961).

charged,"[2] while at the same time avoiding the constitutional due-process infirmities set forth in *State v. Shaw,* 106 Ariz. 103, 471 P.2d 715. See, "Competency to Stand Trial and the Insanity Defense in Wyoming—Some Problems," 10 Land and Water L.Rev. 229 (1975). In its effort to solve the problem, the legislature adopted a hybrid-type of bifurcated trial procedure filled with lofty ideals, but replete with practical ambiguities. The ambiguities are exemplified in the context of the rape and attempt-to-commit-rape charges.

The essential elements of the crime of rape are these: (1) carnal knowledge (2) of a woman or female child (3) forcibly and (4) against her will. § 6–63, W.S.1957, 1975 Cum.Supp. Rape is commonly classified as a general-intent crime and, as a result, "no intent is requisite other than that evidenced by the doing of the *acts constituting the offense charged.*" [Emphasis supplied] *Rhodes v. State,* Wyo., 462 P.2d 722, 727; and *State v. Smith,* 3 Wash.2d 543, 101 P.2d 298, 302. On the other hand, attempt to commit rape is composed of the following elements: (1) assault or assault and battery (2) upon any female (3) with intent to commit the crime of rape. § 6–64, W.S.1957. This offense is commonly referred to as a specific-intent crime, since it requires proof of intent other than the mere doing of an act. *Martinez v. State,* Wyo., 511 P.2d 105, 109; *Rhodes v. State,* supra, at 727–728; and *State v. Wilson,* 32 Wyo. 37, 228 P. 803, 805.

Section 7–242.5(a), supra, requires that these various elements be compartmentalized as either "acts charged in the alleged criminal offense" (stage 1) or, alternatively, "remaining elements of the alleged criminal offense" (stage 2). With respect to the offense of rape, only carnal knowledge would seem to fit within the literal meaning of the phase, "acts charged in the alleged criminal offense," since the concept of force would go to the defendant's intent and the element of consent would go to the prosecutrix's intent and conduct. But the language of *Rhodes v. State,* supra, indicates that "acts charged in the alleged criminal offense" may include more than that which is commonly perceived as "acts." Where there is proof of the "acts constituting the offense charged," a presumption of intent arises. *Rhodes v. State,* supra, at 727. See also *People v. Yukl,* 83 Misc.2d 364, 372 N.Y.S.2d 313, 316–317 (1975); and *State v. Novosel,* 115 N.H. 302, 339 A.2d 16, 17 (1975). In other words, the language of § 7–242.5(a), supra, may permit admission of evidence during the first procedural phase relating to the defendant's use of force and the victim's want of consent. The appellee argues that such a construction would fail to give meaning to the "remaining elements" language contained in § 7–242.5(a), supra. We find that, to the contrary, the presence of the "remaining elements" language merely adds to the confusion which permeates this procedure.[3] Applying the appellee's interpretation to this rape case and strictly limiting first-phase evidence to the "acts charged," the following situation would result: The prosecutrix would only be allowed to identify the defendant and testify that he had sexual intercourse with her. There could be no evidence of attendant circumstances which in any way, expressly or implicitly, went to the defendant's general intent to commit rape or to the prosecutrix's consent

---

**2.** See Vol. X, No. 1, 1975, Land and Water Law Review, page 252, where this problem is ably discussed. The author refers to the defining of the problem as set out in *State v. Whitlow,* 45 N.J. 3, 210 A.2d 763, 777 (1965), where the New Jersey Supreme Court said:

".  .  . The difficult question is whether inculpatory statements or confessions of the accused respecting the crime charged, made during the psychiatric interview and examination, may be introduced in evidence. .  .  ."

**3.** See also the preamble to Session Laws of Wyoming 1975, ch. 191, which provides that one of the purposes of the act is to provide for the "separation of issues of *guilt* and mental illness or deficiency at trials where pleas of not guilty and not guilty by reason of mental illness or deficiency are both plead [sic]." [Emphasis supplied] Although such language is not binding, it is worthy of consideration. *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Niezwaag,* Wyo., 452 P.2d 214.

or lack thereof, since that, too, implicitly relates to the defendant's general intent. There could be no forensic evidence relating to a struggle, since that, also, might go to the defendant's general intent and consent of the prosecutrix. If available, an attending physician might testify to the presence of sperm, motile or nonmotile, and the general time limits within which sexual intercourse occurred. It is fundamental to criminal law, that each essential element of a crime must be proved beyond a reasonable doubt. *Rhodes v. State,* supra, at 728; *Goich v. State,* 80 Wyo. 179, 339 P.2d 119; and *State v. Parmely,* 65 Wyo. 215, 199 P.2d 112. Without an explanation of the context within which the act of carnally knowing the female took place, any trial court would be hard pressed to allow a jury to find that the State had proved carnal knowledge beyond a reasonable doubt, given the paucity of such evidence. This would result in the first-phase procedure contained in § 7–242.-5(a), supra, being reduced to a "swearing" contest. We cannot believe the legislature intended such a result. But, neither can we believe that the legislature intended to have all elements of an alleged offense presented during the first phase, since this would allow a jury to determine guilt without the benefit of evidence going to the issue of insanity and would result in giving sanction to the constitutional infirmities inherent in such a procedure. See *State v. Shaw,* supra.

In *State v. Shaw,* supra, the Arizona Supreme Court was faced with a bifurcated trial procedure which separated the issues of guilt and mental responsibility. In regard to the constitutionality of such a procedure, the court concluded, at 471 P.2d, pp. 724–725:

". . . To prohibit the introduction of any or all of the evidence bearing on proof of insanity at the trial of guilt or innocence would deprive a defendant of the opportunity of rebutting intent, premeditation, and malice, because an insane person could have none. The first trial then would involve only proof that an act of a criminal nature had been committed, and that the defendant committed it. In effect, this gives rise to a presumption of intent, premeditation, or malice which runs counter to the common-law and constitutional concepts of criminal law. The second trial is limited solely to the question of legal insanity, the guilt of the defendant having already been determined. There is no provision, nor realistically could there be, to determine also intent, premeditation, or malice in reduction of the degree of the crime. Thus, the presumption raised in the first trial becomes an irrebuttable presumption. Such a presumption is in violation of due process, as was pointed out in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 255, 96 L.Ed.2d [sic] 288:

" ' "As we read the record this case was tried on the theory that even if criminal intent were essential its presence (a) should be decided by the court (b) as a presumption of law, apparently conclusive, (c) predicated upon the isolated act of taking rather than upon all of the circumstances. In each of these respects we believe the trial court was in error.

" ' "Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury. State court authorities cited to the effect that intent is relevant in larcenous crimes are equally emphatic and uniform that it is a jury issue. The settles [sic] practice and its reason are well stated by Judge Andrews in *People v. Flack,* 125 N.Y. 324, 334, 26 N.E. 267, 270, 11 L.R.A. 807: 'It is alike the general rule of law, and the dictate of natural justice, that to constitute guilt there must be not only a wrongful act, but a criminal intention. Under our system, (unless in exceptional cases,) both must be found by the jury to justify a conviction for crime. However clear the proof may be, or however incontrovertible may seem to the judge to be the inference of a criminal intention, the question of intent can never be ruled as a question of law, but must always be submitted to the jury. * * *.

*    *    *    *    *    *

" ' "We think presumptive intent has no place in this case. A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary. Even congressional power to facilitate convictions by substituting presumptions for proof is not without limit. *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519.'

For this Court to comply with due process, the statute would have to be interpreted as allowing admission of all the evidence at the first trial but to do this it emasculates the act in such a way that it would not be carrying out the purpose for which it was intended. The adoption of the reasonable interpretation of the act is a violation of due process, particularly since the lack of procedural due process adversely affects substantive rights to a fair trial.' "

The Wisconsin Supreme Court has held in *State v. Hebard,* 50 Wis.2d 408, 184 N.W.2d 156, that the separation is not violative of the due-process requirements because an insane person cannot form the intent to commit the crime. Wisconsin law conceives that a finding of insanity is not a finding of inability to intend but is, rather, a finding that if the defendant is insane he is to be excused from his acts.

Additionally, in Wisconsin the defendant has a choice—he may choose to be tried under the bifurcated procedure or, on the other hand, he may elect to have all of the issues tried together, whereupon the state as a part of its case assumes the burden of proving the sanity of the defendant beyond a reasonable doubt.

As we will later more fully discuss, a defendant in Wyoming does not have this choice under our statute. As a matter of fact, the court in the instant matter refused to permit the trial of all the issues at one time.

We point these distinctions up to underscore the fact that the Wisconsin case law is of no aid to us here for the reasons we have set out above. We would further add that the real distinction between the Wisconsin cases and *Shaw,* supra, is that in Wisconsin the defendant is *excused* from criminal responsibility while in Arizona insanity would *preclude* the elements of intent and thus require a finding of no criminal violation.

■■■ We find that Wyoming has adopted the Arizona approach. Section 7–242.5(b), supra, provides:

"(b) The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged and the mental responsibility of the defendant. However, every defendant is presumed to be mentally responsible and the burden of first going forward and entering evidence on the issue of mental responsibility is upon the defendant."

The predecessor of this provision, § 7–242(a), W.S.1957, provided:

"(a) The prosecution shall prove beyond a reasonable doubt both the commission of the offense charged and the sanity of the defendant at the time of the commission of the offense; provided that the state shall be aided by the presumption that the defendant is sane until evidence to the contrary is presented; and the burden of first going forward and entering evidence of insanity shall be upon the defendant. . . ."

Although the legislature has modified the provision so that the presumption of mental responsibility does not seem to disappear

upon introduction of evidence to the contrary (a question which is not yet before this court), this does not in any way disturb the underlying rule that the State must prove sanity beyond a reasonable doubt. *Reilly v. State*, Wyo., 496 P.2d 899, 902. We said in *Reilly*:

"The rule has been clearly established in Wyoming by both statute and case law that the burden of proving sanity beyond a reasonable doubt rests upon the State, § 7–242, W.S.1957; *Flanders v. State*, 24 Wyo. 81, 156 P. 39, 42–43, rehearing denied 156 P. 1121; *State v. Pressler*, 16 Wyo. 214, 92 P. 806, 809–810, 15 Ann.Cas. 93. By the statute the legislature has additionally limited the presumption of sanity *until* evidence to the contrary is introduced."

The sanity of an accused is, therefore, an integral part of a determination that he is guilty of the alleged offense. This conclusion is further buttressed by reference to the language of § 7–242.5(a) itself, which attempts to combine the determination of intent as a "remaining element," and mental responsibility.

We are faced, then, with two possibilities. First, § 7–242.5(a), supra, can be construed as calling for a strict dichotomy between evidence going to "acts" per se and evidence going to intent or other criminal-offense elements. This interpretation places an impossible burden on the trial courts and fails to give the requisite regularity of procedure with respect to the admissibility of evidence. Second, the provision can be construed as permitting, expressly or implicitly, the introduction of evidence, other than that relating only to "acts" per se, during the first procedural phase. This, in turn, may give rise to a presumption of intent in general-intent crime situations (*Rhodes v. State*, supra), and, therefore, be a more obvious violation of due process of law (*State v. Shaw*, supra).

We must, therefore, hold that with respect to general-intent crimes, such as rape, § 7–242.5(a), supra, fails to meet the requirements of due process.

A similar analysis of the statute as it applies to specific-intent crimes, such as attempt to commit rape, reaches a similar result. The statute is still ambiguous as to what is included in the phrase "acts charged in the alleged criminal offense." But even if the statute could be strictly limited so that only evidence of "acts" per se, such as a touching, could be admitted during the first phase, the trial court again would be faced with the previously-alluded-to evidence-sufficiency problem. This serves only to create an artificial procedural atmosphere, within which the criminal defendant has no idea of how to proceed in asserting his defense. The manner of proceeding is left entirely to the trial judge, who also must act without guidance. The statute is, therefore, impermissibly uncertain. Even if we could construe the statute as providing the requisite certainty with respect to specific-intent offenses, since the distinction between act and intent is at least theoretically greater, we would then be forced to say that the § 7–242.5(a) procedure was applicable to some criminal defendants, but not to others. We do not believe that this division by type of crime is sanctioned by due-process requirements, especially since the decision as to what is a specific as opposed to general-intent crime would often be as uncertain as the admissibility-of-evidence question.

We, therefore, conclude that § 7–242.5(a), supra, fails to satisfy due-process requirements with respect to specific-intent crimes, such as the instant alleged attempt to commit rape.

## APPLICATION OF § 7–242.5(a)

The problems inherent in this bifurcated procedure can be further disclosed by viewing its operation to the instant case.[4]

4. This court has previously been faced with the application of § 7–242.5(a), supra. *Dodge v. State*, Wyo., 562 P.2d 303 (1977). We were confronted therein with a completely different situation, since in Dodge the defendant admit-

ted that she "committed the acts charged in the alleged criminal offense," and the case proceeded only on the issue of mental responsibility.

As we discussed previously, the statutory procedure fails to provide sufficient guidance as to the type of evidence which is admissible during the first procedural phase. As a direct result of this confusion, the prosecution was here allowed to introduce *all* of its evidence, relating to the elements of the alleged offenses, during the first phase. While the trial court attempted to strictly apply § 7–242.5(a), supra, it was inevitable that evidence relating to the attendant circumstances of the alleged rape and attempt to commit rape would come before the jury. As soon as such evidence was admitted, disclosing the manner in which the alleged rape and the alleged assault and battery were perpetrated, and the statements made by the defendant during the course of touching or having sexual intercourse with the prosecutrices, the jury had before it evidence going to the intent of the appellant and the consent, or lack thereof, of the prosecutrices. Even though the degree of intent which must be shown varies between the offenses of rape and attempt to commit rape (*Rhodes v. State*, supra; and *Martinez v. State*, supra), here there arose a presumption of intent to commit both crimes. This presumption became essentially irrebuttable by the time of the second procedural phase.

The State argues that no such presumption of intent arose, because the jury was not asked to find the appellant guilty until the end of the second phase. Although we usually assume that a jury follows the instructions of a trial court, we find it impossible to believe that if a jury is presented with all of the evidence going to a defendant's guilt or innocence and is, at the same time denied access to the evidence pertaining to any defense the defendant might have, it will not form a belief as to the guilt of the defendant. Merely because a jury is asked not to reveal that conclusion "just yet," does not mean that it has not come to the poisonous decision.

In the rape case against appellant, the acts and circumstances of the offense were presented during the first procedural phase.

According to this court's statement in *Rhodes v. State*, supra, there need be no evidence of intent other than proof of the "doing of the acts constituting the offense charged." Once such proof is forthcoming, a presumption of intent necessarily follows. Although the jury was asked, at the end of the first phase, only whether appellant had sexual intercourse with the prosecutrix, it in theory had sufficient evidence before it to make a finding of guilt or innocence. But appellant was not allowed to cross-examine as to the elements of force and consent, or present evidence in rebuttal. Neither was appellant allowed, by the very language of § 7–242.5(a), supra, to present evidence going to his mental responsibility. It is this type of presumed-intent which violated the defendant's right to due process of law in *State v. Shaw*, supra.

In the attempt-to-commit-rape case, again all evidence going to appellant's acts and specific intent was admitted during the first procedural phase. A presumption of intent, although perhaps not as strong as in the rape case, arose without affording the appellant an opportunity to cross-examine or rebut such evidence. This was a violation of due process. *State v. Shaw*, supra. Additionally, at the end of the first phase, the jury was instructed to find by special verdict that

". . . the defendant, Joe Sanchez did [did not] unlawfully touch . . ., a female, *in an attempt to have sexual intercourse with her.*" [Emphasis and bracketed matter supplied]

The jury was not, however, instructed as to the meaning of the word "attempt." An "attempt" is commonly defined as:

"An effort or endeavor to accomplish a crime, amounting to more than mere preparation or planning for it, which, if not prevented, would have resulted in the full consummation of the act attempted, but which, in fact, does not bring to pass the party's *ultimate design*." [Emphasis supplied] Black's Law Dictionary at 162 (4th Ed. 1968)

A specific intent to commit a crime toward which an act moves is a necessary element of an attempt to commit a crime. 22 C.J.S. Criminal Law § 75(3). It would seem, then, that by asking the jury to find a touching "in an attempt to have sexual intercourse," the trial court implicitly asked the jury to consider the intent element. This, we believe, merely served to compound the confusion and the resultant denial of due process to appellant.

It is true that appellant failed to object to the introduction of evidence during the first phase, at least to the extent that such evidence fell outside the first-phase inquiry under § 7–242.5(a), supra. Given the confusion inherent in this statutory procedure, we cannot say that appellant waived his right to contest the act's constitutionality as it was applied to him. Even if objections had been made, the trial court had no standards upon which to determine their propriety. The inevitable effect would have been to strip the first phase of all meaning, or to have made arbitrary rulings. The trial court, at the end of the first phase, recognized this problem when it provided that appellant could recall the State's witnesses for cross-examination during the second phase. But by this time the damage was done, since the jury had before it all the evidence bearing on the guilt or innocence of the appellant. The effect of the trial court's corrective ruling was to impermissibly shift the burden of proof to the appellant. See *People ex rel. Juhan v. District Court*, 165 Colo. 253, 439 P.2d 741. The prosecution always has the burden to show guilt beyond a reasonable doubt. *Rhodes v. State*, supra; *Goich v. State*, supra; and *State v. Parmely*, supra. In meeting this burden, the State was impermissibly aided by a presumption of intent which arose before the appellant had an opportunity to present his defense of insanity. *State v. Shaw*, supra. Such a manner of proceeding in criminal cases would reduce the trial to a meaningless sham which operates by tying both of the defendant's hands behind his back. Our judicial system does not tolerate such an approach, and we will not sanction it.

## DECISION

We hold that § 7–242.5(a), W.S.1957, 1975 Cum.Supp., is in violation of due process of law as provided in our State constitution and the Constitution of the United States, and that it was applied in the case at Bar in violation of appellant's right to due process of law.

Appellant does not suggest that the act is indivisible, and there has been no showing that it is unconstitutional as a whole. Furthermore, deletion of this section would not destroy the purposes of the act. Therefore, we find a constitutional encroachment only with respect to § 7–242.-5(a), supra. See *Holm v. State*, Wyo., 404 P.2d 740, at 743–745. We further hold that the last sentence contained in § 7–242.5(a), supra, does not bear the taint which we find objectionable in the preceding portions of the section. Since this portion of the section is a necessary part of the amended procedure in mental-illness or deficiency cases, it shall be retained.

Appellant also contends that § 7-242.5(a), supra, interferes with this court's inherent power to regulate the course of litigation; that the trial court erred in an instruction dealing with the intent necessary to convict appellant of an attempt to commit rape; that the trial court erred in failing to instruct on the effect of the uncorroborated testimony of a prosecutrix; and that there was insufficient evidence to sustain the convictions. We find it unnecessary to reach these contentions.

The judgments are reversed and the cases remanded for a new trial.

Reversed.

THOMAS, Justice, dissenting.

I am unable to join in the disposition made by my brethren in this case. The striking of the provisions of § 7–242.5(a), W.S. as unconstitutional is not required.

We have heretofore recognized that " * * * There is a strong presumption of constitutionality. * * * " *Budd v. Bish-*

*op,* Wyo., 543 P.2d 368, 371 (1975). In *State v. Stern,* Wyo., 526 P.2d 344 (1974) this Court said, at 526 P.2d 347, "* * * [E]very law must be presumed to be constitutional, with all reasonable doubt resolved in its favor * * *," and at 526 P.2d 348, "* * * [I]t is important to sustain the constitutionality of statutes wherever it is possible. * * *" In *Weiss v. State ex. rel. Cardine,* Wyo., 455 P.2d 904 (1969), cert. den. 398 U.S. 927, 90 S.Ct. 1815, 26 L.Ed.2d 89 (1970), the principle was expressed as follows, at p. 907:

"We have held over and over again that a law will not be construed to be unconstitutional unless its unconstitutionality is clear and beyond a reasonable doubt; and the party who assails the validity of such law has the burden of proving his contention. * * *"

As opposed to the strong presumption of constitutionality, which I submit does not disappear simply because Sanchez claims unconstitutionality, the reasoning of the majority opinion rests upon three assumptions which are not valid. The first of these is that the procedure provided in § 7-242.5(a), W.S., is substantially the same as the Arizona procedure discussed in *State v. Shaw,* 106 Ariz. 103, 471 P.2d 715 (1970). These procedures are not the same. The second and third assumptions are found in the language of the majority opinion that

"* * * [H]ere there arose a presumption of intent to commit both crimes * * *"

and

"* * * [W]e find it impossible to believe that if a jury is presented with all of the evidence going to a defendant's guilt or innocence and is, at the same time denied access to the evidence pertaining to any defense the defendant might have, it will not form a belief as to the guilt of the defendant. Merely because a jury is asked not to reveal that conclusion 'just yet,' does not mean that it has not come to the poisonous decision."

It is impossible for me to accept the assumption that juries in the courts of the State of Wyoming will not follow the instructions given them by the trial court. Neither does any language in the statute inhibit evidence favorable to the defendant at the initial trial stage. Alibi, for example, obviously would be tried in the first stage.

It may be that the words "bifurcated trial" accurately describe the procedure provided in § 7-242.5(a), W.S. It appears that the words were adopted from the opinion in *State v. Shaw,* supra. "Bifurcated trial" cannot describe both the Arizona procedure discussed in *State v. Shaw* and the procedure provided in § 7-242.5(a), however, because these procedures are different.

Under the Arizona statute [A.R.S. § 13-1621.01], which was declared unconstitutional in *State v. Shaw,* supra, the statute provided:

"A. In any case where the defense of not guilty by reason of insanity is asserted, *two trials* shall be set unless good cause for a single trial is shown.

"B. *The first trial shall determine the issue of guilt or innocence and, if appropriate, the degree of the crime.* The multiple trial concept shall not affect the judicial burden of proof or the applicability of § 13-131. At the discretion of the court, the jury may be informed that there may be two trials and what issues will be decided at each.

"C. *If the defendant is found guilty at the first trial, there shall be a second trial following promptly after the first trial.* At the second trial, the jury shall consider the defense of insanity and, if appropriate, the defendant's present mental condition with regard to commitment to a mental institution. * * *" [Emphasis added]

With respect to § 13-131 which is referred to in the foregoing statute, it appears that in the first trial the practice would be to instruct in the language of § 13-131:

"* * * The intent or intention is manifested by the circumstances connected with the offense, and the sound mind

and discretion of the accused. All persons are of sound mind who are neither idiots nor lunatics nor affected with insanity."

This Arizona procedure might aptly be described as saying to the jury in effect, "Now that you have found this defendant guilty and sane, here is your chance to find him insane and therefore not guilty." Given the procedure spelled out, I would not protest the correctness of the decision in *State v. Shaw,* supra.

In Wyoming, however, the legislature simply has said:

"When a defendant couples a plea of not guilty with a plea of not guilty by reason of mental illness or deficiency, there shall be a sequential order of proof before the same jury in a continuous trial. First, evidence shall be heard and a special verdict taken on whether the defendant in fact committed the acts charged in the alleged criminal offense. If by special verdict the jury finds that the defendant did in fact commit such acts, then evidence shall be heard on the remaining elements of the alleged criminal offense and on the issue of mental responsibility of the defendant." § 7–242.5(a), W.S.

Under this procedure the determination of guilt or innocence does not occur until after the evidence on the remaining elements of the alleged criminal offense and on the issue of mental responsibility of the defendant has been heard.

These procedures obviously are not the same nor are they substantially the same as the majority opinion assumes.

In submitting this case to the jury, according to the provisions of § 7–242.5(a), W.S., at the first stage of the trial the district court instructed the jury:

"We are now at that stage in this trial where you must determine, by a special verdict, whether the defendant in fact committed the acts charged in the criminal offenses. In your consideration of this special verdict being submitted to you, *you do not make any finding of guilt or innocence as to the criminal offenses* charged nor do you make any *finding as*

*to the issue of the mental responsibility* of the defendant." [Emphasis added]

The jury is presumed to have followed this instruction by the court. *Lonquest v. State,* Wyo., 495 P.2d 575 (1972), cert. den. 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972); and *Dobbins v. State,* Wyo., 483 P.2d 255 (1971). In *Dobbins v. State,* supra, this Court said, at 483 P.2d 259:

" * * * [T]he trial court very carefully instructed the jury that it should deliberate upon and decide each of the State's charges separately and independently from the other and under no circumstances was it to consider the facts and evidence relating to one of the charges in determining the guilt or innocence of the defendant on the other. It is presumed, of course, that the jury followed these instructions * * *."

The assumption in the majority opinion that the jury could not refrain from reaching a conclusion with respect to guilt or innocence or mental responsibility is irreconcilable with the presumption attaching to the instruction given by the district court.

Turning to the included assumption that in the initial stage of trial the " * * * jury is presented with all of the evidence going to a defendant's guilt or innocence and is, at the same time denied access to the evidence pertaining to any defense the defendant might have * * *," there is nothing contained in § 7–242.5(a) which supports any such conclusion. No reason at all appears why all of the evidence, both that of the state and that of the defendant, pertaining to the issue of " * * * whether the defendant in fact committed the acts charged in the alleged criminal offense * * *" should not be presented at the initial stage of the trial. Indeed the hearing of evidence would assume all of the evidence on that issue. The defendant could put in whatever evidence he might choose pertaining to any theory of defense except insanity, and the district court, in its discretion certainly could permit arguments by counsel prior to submitting that issue to the jury for a special verdict.

With all due respect to the majority of this Court, the combination of these three assumptions is not an adequate premise to declare the statute unconstitutional in light of the strong presumption as to its constitutionality.

It remains to be considered whether in any event the statute is so vague that it cannot be applied. My opinion is that it is not vague. In every criminal trial, at some point, the trial court must form a conclusion as to the essential elements of the offense or offenses charged, and instruct the jury with respect to those elements. In pursuing the procedure suggested by this statute the trial court can compare those elements with "the acts charged in the alleged criminal offense" and determine which elements should be submitted to the jury in the initial stage of trial. Any other elements which always would include the matter of general intent and the matter of specific intent, if any, and in some instances, such as under our homicide statute, the matter of the defendant's state of mind, would be reserved together with the issue of mental responsibility for the second stage of the proceeding.

Turning to this case, for example, the district court instructed the jury as follows with respect to the offense of rape:

"The material facts [elements] upon the charge of rape are:

"1. That the defendant had carnal knowledge of Donna Burt, a woman;

"2. That the defendant had carnal knowledge of the said Donna Burt forcibly and against her will; and

"3. That the crime was committed in the County of Laramie and State of Wyoming."

In pertinent part the information which was filed charged that the defendant:

"[O]n or about the 14th day of February A.D. 1975, at the County of Laramie, in the State of Wyoming, did unlawfully and feloniously have carnal knowledge of a woman forcibly and against her will, to wit; did unlawfully and feloniously have carnal knowledge of Donna Burt, a woman, forcibly and against her will, contrary

to § 6–63A W.S.1957 as amended. * * * *"

As I would construe the statute in connection with this offense the only remaining element, which would be true in every instance would be the general intent of the defendant. That, being substantially the other side of the coin of mental responsibility, is the only element that appropriately would have been tried with respect to the rape charge in the second stage of the trial. All other acts charged in this alleged offense would be tried in the initial stage.

I note, almost parenthetically, that the majority opinion would exclude from the first stage of this trial everything except the carnal knowledge or sexual intercourse. A part of the reasoning justifying that treatment is that any other attendant circumstances which might in any way, expressly or implicitly, go to the defendant's general intent or to the prosecutrix's consent or lack thereof, would be foreclosed. I would hold that the statute deals only with the intent, state of mind, or mental responsibility of the defendant, and that all the attendant circumstances would appropriately be part of the proof in the first stage of the proceeding. I would construe the statute as focusing on issues, not evidence. The fact that some of the evidence at the initial stage might be relevant with respect to the issues reserved for the second stage should not prevent its admission. Its effect at the initial stage of the trial would be controlled by the instructions to the jury.

Turning to the offense of assault and battery with intent to commit rape, the district court instructed the jury as follows:

"The material facts [elements] upon the charge of assault and battery with intent to commit rape are:

"1. That the defendant committed an assault and battery upon one Jill Heath, as assault and battery was previously defined in a prior instruction;

"2. That such assault and battery was committed by the defendant upon the said Jill Heath with the intent to commit the offense of rape upon the said Jill Heath;

"3. That the crime was committed in the County of Laramie and State of Wyoming."

In material part in this instance, the information alleges that the defendant:

" * * * [O]n or about the 14th day of February A.D. 1975, at the County of Laramie, in the State of Wyoming, did unlawfully and feloniously perpetrate an assault or an assault and battery upon a female with intent to commit the crime of rape, to wit; did unlawfully and feloniously perpetrate an assault and battery upon Jill Heath, a female, with intent to commit the crime of rape, contrary to § 6–64 W.S.1957 as amended * * *."

In this instance the submission to the jury at the first stage would include the material elements of an unlawful touching in a rude, insolent or angry manner and venue, and there would be reserved for the second stage, the general intent of the defendant; the specific intent to commit the offense of rape; and his mental responsibility.

Another way of separating those issues to be tried at the initial stage of the trial from those to be tried at the subsequent stage is to draw a distinction between objective and subjective facts. The former, which would include those facts demonstrable by either direct observation or circumstantial evidence of the actual events would be tried in the initial stage. These relate to what happened as distinguished from why it happened. The latter which would include those issues relating to the defendant's state of mind would be tried in the subsequent stage.

I am satisfied that the trial judges in the State of Wyoming are completely capable of applying the statute in the manner which I have suggested. Our district judges deal with many matters which are far more complex and sophisticated than this matter, and which they successfully communicate to jurors in the form of instructions continually. I am content to trust them with this proceeding also.

This construction of the statute is reasonable, and does provide a benefit for the defendant. I would not attempt to sustain this statute if I felt that were a meaningless exercise. I must point out, however, that there appears in § 7–242.3(h), W.S. the following language:

" * * * No statement made by the accused in the course of any examination or treatment pursuant to this section and no information received by any person in the course of the examination or treatment shall be admitted in evidence in any criminal proceeding then or thereafter pending on any issue other than that of the mental condition of the accused."

This means to me that an admission of the accused to an examiner that he had committed the violation can be received in evidence during the stage of the proceeding in which his mental condition is in issue. If that issue is to be tried along with the other elements of the crime, then the accused must try his defense of not guilty in the face of evidence in the form of an admission that he did commit the acts charged. I do not see how he possibly could achieve a desirable result, and the intent of this statute is to relieve him from that burden. This justification is set forth in the note appearing in 10 Land and Water Law Review, p. 252 (1975).

I would sustain this statute as being constitutional and would endeavor to uphold it in accordance with the presumption of constitutionality and our responsibility to honor that presumption. I particularly am interested in sustaining this procedure because under this approach a defendant is not required to confront the issue of whether he did or did not commit the criminal acts charged at the same time he is trying to present his defense of not guilty by reason of insanity. Thus the problem arising out of admissions made in the course of the examination is avoided.

In this instance, however, I would have to agree that the cases must be reversed for a new trial. With respect to the crime of rape the district court in the initial stage of the proceeding submitted to the jury only the sexual intercourse. According to my application of the statute whether the carnal knowledge was accomplished forcibly

and against the will of the victim also appropriately should have been submitted at that stage of the trial. Therefore, with respect to the crime of rape, not enough was submitted. On the other hand, with respect to the crime of assault and battery with intent to commit rape, substantially the special intent of the defendant was submitted in the initial stage of the proceedings, and according to my application of the statute that element should have been reserved for the later stage of the proceeding. In these respects I would hold that the district court erred, and that Sanchez should be retried on both Informations.