Thelma KIND, Appellant (Defendant
below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4990.

Supreme Court of Wyoming.

June 1, 1979.

Gerald M. Gallivan, Director, Wyoming
Defender Aid Program, and Kenneth M.
Koski, Student Intern, Wyoming Defender
Aid Program, Laramie, for appellant.

John J. Rooney, Atty. Gen. of Wyoming,
and Daniel E. White, Asst. Atty. Gen. of
Wyoming, Cheyenne, for appellee.

Before RAPER, C. J., McCLINTOCK,
THOMAS and ROSE, JJ., and GUTHRIE,
J., Ret.

THOMAS, Justice.

The primary issue in this case is con-
cerned with the nature of the evidence a
defendant in a criminal proceeding must
present in order to require the issue of
mental illness or deficiency to be decided by

the jury. A second issue which we will resolve is, assuming that some such evidence is produced, can the State of Wyoming then rely upon the presumption of sanity in order to avoid a judgment of acquittal? In this case the district court refused to submit the issue of mental illness or deficiency to the jury. We find that the defendant did introduce sufficient evidence to require the submission of that issue to the jury, and we will reverse the defendant's conviction of the crime of involuntary manslaughter and remand the case to the district court for a new trial. In so doing we will hold that when the defendant produces evidence of mental illness or deficiency the presumption of sanity cannot be relied upon by the State of Wyoming, but there must be present affirmative evidence tending to establish beyond a reasonable doubt that the defendant was mentally responsible at the time of the crime.

On July 6, 1977, Thelma Kind's four-month-old son drowned in the bathtub at her apartment in Buffalo, Wyoming. The undisputed evidence is that she left the baby in the bathtub, with the drain stopped and the water running, while she went to attend to some laundry which she was doing. Evidence of Thelma Kind's statements to others discloses that she reported she was absent from the bathroom for only a short time. An investigative officer testified that he performed an experiment on the bathtub, and that when running the water at the rate Thelma Kind showed him she had it running when the baby drowned it took 22 minutes, 43½ seconds for the tub to fill to the overflow. Thelma Kind summoned help for her infant son, but the baby was dead at the hospital, all attempts at resuscitation having proved unsuccessful.

The Information filed by the county attorney charged Mrs. Kind with both voluntary and involuntary manslaughter in violation of § 6–58, W.S.1957 (now § 6–4–107, W.S.1977). The Information was amended prior to trial to delete an allegation that the homicide was committed involuntarily in the commission of an unlawful act. After receiving the State's evidence, the trial court eliminated the State's theory of vol-

untary manslaughter upon a sudden heat of passion, and the case was submitted on the theory of involuntary manslaughter by culpable neglect or criminal carelessness on Thelma Kind's part. The jury found Thelma Kind guilty of involuntary manslaughter.

Appropriate instructions were requested by Thelma Kind for the submission to the jury of the issue of mental illness or deficiency. While it is noted that these instructions are not in the form suggested by § 4.101, Wyoming Pattern Jury Instructions, Criminal, no issue is raised that the instructions were not in proper form. Thelma Kind also requested a form of verdict for the purpose of submitting to the jury the question of mental illness or deficiency. These requests were refused by the district judge, who commented:

" * * * I might say for the record just so it doesn't look like at the present stage that I'm just arbitrarily off the top of my head refusing these instructions, have the record show that counsel and the Court had a rather extended discussion as to whether or not the defense had established the question of mental deficiency so as to raise it as an issue, and we attempted to work out something whereby it could be brought out if certain portions of the Wyoming State Hospital report dated October 12, 1977, were admitted by stipulation, and we couldn't work out that stipulation, and therefore, the Court has considered that there was not sufficient evidence to raise the presumption of mental deficiency to an extent that the defendant, at the time of the alleged criminal conduct, as a result of mental illness or deficiency, lacked substantial capacity to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of law. * * * "

The evidence upon which Thelma Kind premises her appeal from the trial court's ruling may be summarized briefly. Exhibit A was a psychological evaluation of Thelma Kind which was accomplished within a

month of her son's death. The primary diagnosis was inadequate personality with a secondary diagnosis of anti-social personality. She was found to be possessed of below average intelligence, and only did well when presented with concrete thought problems. Exhibit B was a summary of an evaluation at the Wyoming State Hospital which was accomplished in 1972 and 1973. The final diagnosis there was borderline mental retardation, psychosocial (environmental) deprivation, and schizophrenia, paranoid type. This exhibit included a report of Thelma Kind's accounts of auditory hallucinations involving a dead brother, a similar visual hallucination, hearing voices in which her name is mentioned, and feelings of being followed. Exhibit C contained information relative to Thelma Kind's commitment to the Wyoming State Children's Home which included a report from a psychological clinic which diagnosed her as an inadequate personality. An expert witness who had done the psychological examination which was marked as Exhibit A testified about this diagnosis, and its manifestations in Thelma Kind's instance.

In presenting her appeal, Thelma Kind states the issues as follows:

"I. Whether the trial judge was required by § 7–11–305(a) to submit to the jury a verdict by which it could find the defendant not guilty by reason of mental illness or deficiency excluding responsibility.

"II. Whether if this court adheres to the 'some evidence' test concerning quantum of evidence necessary to raise the issue of mental illness or deficiency, this burden was clearly met by the defendant.

"III. Whether the court below in determining if the question of sanity should be submitted to the jury, clearly applied an erroneous test, which has no support in Wyoming law.

"IV. Whether the state failed to carry its burden of proof in regard to all the essential elements of the crime; specifically, there was not sufficient evidence to support a finding beyond a reasonable doubt of the mental sanity of the defendant."

In answering these contentions, the State of Wyoming argues first that the issue of the defendant's mental capacity was not withheld from the jury, and further that the trial court did not err in refusing to give the instructions on mental illness or deficiency and submit the form of verdict requested by the appellant.

■ With respect to Thelma Kind's first contention, we must amplify her argument briefly. In part, § 7–11–305(a), W.S.1977, relates to pleas and a sequential trial procedure with this latter aspect of the statute having been declared unconstitutional by this court in *Sanchez v. State,* Wyo., 567 P.2d 270 (1977). The last sentence then provides:

"In addition to other forms of verdict submitted to the jury, the court *shall* submit a verdict by which the jury may find the defendant not guilty by reason of mental illness or deficiency excluding responsibility." (Emphasis added.)

Thelma Kind argues that since this last sentence is phrased in mandatory fashion it requires the submission of the issue to the jury when a plea of not guilty by reason of mental illness or deficiency is entered. Thelma Kind overstates the thrust of this statute which, as enacted, did refer specifically to the hearing of evidence, even though the manner of doing so was disapproved in *Sanchez,* supra. In the absence of evidence submitted by a defendant in a criminal proceeding tending to establish mental illness or deficiency, a district court should not, despite the language of the statute, submit the issue of mental illness or deficiency to the jury simply on the basis of a plea of not guilty by reason of mental illness or deficiency.

■ Turning to the primary issue in this case, we previously have noted, although we did not recite in detail, the nature of the evidence which Thelma Kind presented with respect to mental illness or deficiency. While the form of our statute was changed in 1975, Ch. 191, S.L. of Wyo-

ming, 1975 [1], the change did not alter the rule in Wyoming to the effect that once the defendant introduces evidence on the issue of mental responsibility the burden becomes that of the State to prove beyond a reasonable doubt that the defendant did not, as a result of mental illness or deficiency, lack substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. *State v. Sanchez,* supra; *Rice v. State,* Wyo., 500 P.2d 675 (1972); *Reilly v. State,* Wyo., 496 P.2d 899 (1972), rehearing denied 498 P.2d 1236 (1972); *Flanders v. State,* 24 Wyo. 81, 156 P. 39 (1916), rehearing denied 24 Wyo. 81, 156 P. 1121 (1916); and *State v. Pressler,* 16 Wyo. 214, 92 P. 806, 15 Ann. Cas. 93 (1907). The evidence presented by the defendant in this case was ample to satisfy the requirement that she enter evidence of mental illness or deficiency, and it required the submission of that issue to the jury by the trial court. This is the basis of our reversal of this conviction.

The appellant suggests that the court below applied an erroneous test in concluding not to submit this issue to the jury. While the language of the trial judge in ruling upon the offered instructions well could lend itself to that conclusion, it also is susceptible to an interpretation that the trial judge was focused upon the matter of borderline mental retardation which was emphasized in the presentation of Thelma Kind's evidence. The trial judge may, for that reason, have overlooked the other evidence of mental illness which was present in the record, and may have failed to respond to that evidence in ruling upon the offered instructions. Because of the presence of the other evidence of mental illness we do not decide in this case whether the evidence of mental retardation standing alone would have required the submission of the issue of mental responsibility to the jury. We must wait for a proper case to present that problem under our statute.

■ The appellant also contends that because of the failure of the State to go forward with evidence as to the mental responsibility of Thelma Kind, her Motion for Judgment of Acquittal should have been granted. She argues that the State may not rely upon a presumption of mental responsibility to meet evidence by the defendant on the issue. We agree with this argument of Thelma Kind. Since our statute does require the prosecution to prove the mental responsibility of the defendant beyond a reasonable doubt it is our conclusion that it is antithetical to that requirement to permit the prosecution to rely upon a presumption of sanity the effect of which is limited to excusing it from introducing evidence if the defendant introduces none.[2] Once the defendant has offered evidence tending to show a lack of mental responsibility, the State then can rely only upon evidence which would show mental responsibility, and this is the manner in which it must meet its burden of establishing that element of its case beyond a reasonable doubt. Cf., *Sanchez v. State,* supra. See e. g., *People v. Cochran,* 313 Ill. 508, 145 N.E. 207 (1924), and *Bradford v. State,* 234 Md. 500, 200 A.2d 150, 17 A.L.R.3d 134 (1964). In this instance the record did contain evi-

1. Compare § 7–242(a), W.S.1957:

"(a) The prosecution shall prove beyond a reasonable doubt both the commission of the offense charged and the sanity of the defendant at the time of the commission of the offense; provided that the state shall be aided by the presumption that the defendant is sane until evidence to the contrary is presented; and the burden of first going forward and entering evidence of insanity shall be upon the defendant. The testimony of examining experts authorized in this act [§§ 7–239 to 7–243] shall be received either on behalf of the state or the defendant, under the rules of evidence applicable to criminal cases."

with § 7–11–305(b), W.S.1977:

"(b) The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged and the mental responsibility of the defendant. However, every defendant is presumed to be mentally responsible and the burden of first going forward and entering evidence on the issue of mental responsibility is upon the defendant."

2. This was the rule prior to the 1975 amendment of the statute. *Reilly v. State,* Wyo., 496 P.2d 899 (1972). There is nothing to indicate that the legislature intended to change this rule when it amended the statute.

dence in the defendant's exhibits and in testimony elicited by the State from a defense witness from which mental responsibility at the time of the offense could be inferred. A jury issue was present under all the evidence.

■ The suggestion of the State that the issue of mental competence actually was submitted to the jury is of no avail here. It was submitted only in the form of advice that the jury could consider the mental capacity of the defendant in considering whether there was culpable neglect or criminal carelessness. This instruction did not in any way require proof of the additional element of mental responsibility by the prosecution. The difference between mental competence and mental responsibility is apparent and basic. Consequently the issue was not submitted.

Reversed and remanded for a new trial in accordance with the foregoing opinion.

ROSE, J., filed a partially concurring and partially dissenting opinion.

ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., retired, was assigned, having been retained in active judicial service pursuant to § 5, Art. 5, Wyoming Constitution, and § 5–1–106(f), W.S.1977, by order of the court entered on January 1, 1979.

ROSE, Justice, partially concurring and partially dissenting.

I am in full agreement with the majority's discussion of issues I, II and III. I am unable, however, to agree that there is evidence in this record from which a jury could find, beyond a reasonable doubt, that the defendant was mentally responsible at the time of the crime. I would, therefore, have reversed the defendant's conviction and remanded the case to the district court with directions to enter an order of acquittal. In my opinion, there being insufficient evidence of mental responsibility at the defendant's first trial, a second trial is precluded by principles of double jeopardy. See, *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

When reviewing the sufficiency of the evidence on an appeal, the test is whether the evidence is sufficient to form a basis for a jury's reasonable inference of guilt beyond a reasonable doubt when the State's evidence is viewed most favorably. *Mirich v. State,* Wyo., 593 P.2d 590 (1979). In the course of this review, we must look at all of the evidence that supports the jury verdict—the State's and the defendant's. See, *Driver v. State,* Wyo., 589 P.2d 391 (1979).

In this case, it is conceded that the State offered no evidence of mental responsibility in its case-in-chief. It didn't have to, since it was the defendant's initial burden of going forward with evidence showing a lack of mental responsibility. § 7–11–305(b), W.S.1977. The majority concedes that the defendant sustained her burden of going forward, and that thereafter the State could not rest on the statutory presumption of mental responsibility. From that point on, as is true with any other element which needs to be proven, it was the State's burden to prove mental responsibility beyond a reasonable doubt.

The majority concludes that there was sufficient evidence from which mental responsibility could be inferred. In support of this conclusion, the majority points to a defense exhibit and testimony elicited from a defense witness during cross-examination. The only possible defense exhibit the majority could be referring to is Defense Exhibit "B"—which consists of records from the Wyoming State Hospital. The only material contained in these records which is even remotely beneficial to the State would be a notation that the defendant was discharged from the Wyoming State Hospital on June 23, 1973.

The alleged criminal incident with which we are concerned occurred more than four years after this discharge—on July 6, 1977. The statutory provision which excludes responsibility by reason of mental illness or deficiency speaks as of *the time of the criminal conduct.* See, § 7–11–304(a), W.S. 1977. Certainly, when a person places in issue his mental responsibility, the prosecu-

tion may inquire into his condition before and after the time of the alleged act. *State v. Carroll,* 52 Wyo. 29, 69 P.2d 542 (1937). But, it must be noted that Defense Exhibit "B" also makes a final diagnosis of "borderline mental retardation, psycho-social (environmental) deprivation," with a prognosis that is "guarded." I fail to see how any positive inference of mental responsibility on July 6, 1977, can be drawn from this material.

The defense witness of whom the majority speaks must be Scott Rosenke, who was stipulated to be an expert witness. Mr. Rosenke testified that the defendant had an inadequate personality which was tied to her borderline mental retardation. He testified that she "definitely" had difficulty seeing the consequences of her actions. On cross-examination, he testified that she understands the consequences of her actions "when they are laid out to her, but she does not foresee them." On re-direct, he responded affirmatively to a question as to whether "the defendant has an inability to properly make judgment with regard to the consequences of her actions". The gist of Mr. Rosenke's testimony was that the defendant could solve concretely presented problems, but had difficulty figuring out the consequences of her responses to daily living problems.

The uncontradicted evidence in this case is that the defendant had borderline mental retardation, which was tied to and manifested itself in inadequate personality.[1] A defect attributable to mental retardation is a "mental deficiency" under the statutes. § 7–11–301(a)(iii), W.S.1977. The only question, therefore, is whether, as a result of this mental deficiency, the defendant "lacked substantial capacity either to appreciate the wrongfulness of [her] conduct or to conform [her] conduct to the requirements of law." § 7–11–304(a), supra. For me, in the context of this appeal, the question becomes whether there was evidence

from which the jury could infer that the defendant *did* have substantial capacity to appreciate the wrongfulness of her conduct and to conform her conduct to the requirements of law. In my mind, there was no such evidence adduced through cross-examination of Mr. Rosenke. While he opined that the defendant could solve concretely presented problems, that is not the test for mental responsibility under the statutes. The test, under the statutes, is whether at the time of the alleged offense the defendant had substantial capacity to appreciate the wrongfulness of her acts. In this regard, Mr. Rosenke opined that the defendant had definite difficulty appreciating the consequences of her acts. Unless the jury would be permitted to totally ignore this testimony and base its conclusion on pure speculation, the record is simply barren of anything that would assist the State in proving the defendant's mental responsibility beyond a reasonable doubt. Under these circumstances, I would not give the State a "second bite at the apple."

---

1. Inadequate personality was defined by Mr. Rosenke as:

". . . characterized by ineffectual responses to emotional, social, intellectual and physical demands. While the person may seem neither physically nor mentally deficient, he or she does manifest inadaptability, ineptness, poor judgment, social instability and lack of physical and emotional stamina."